John T. Ries, Appellant, v. Albert Hemmer, President, et al, Members of the Board of Directors of the Independent School District of Iowa City.

Schools: SALE OF BOOKS: INJUNCTION: RIGHTS OF TAXPAYER. A
1  school board has no authority to contract with a bookseller and pay him out of the contingent fund for handling school books,

where the district does not buy the books for resale but simply arranges with the publishers to place the same with the dealer to be sold by him at a stated price; and a taxpayer may maintain an action to restrain payment under such a contract.

**Estoppel.** The fact that a taxpayer at one time was a party to an
2  illegal contract with a school district to handle books placed with him for sale, did not estop him from maintaining a suit to restrain payment by the district under a similar contract with another.

*Appeal from Johnson District Court.*— Hon. O. A. BYINGTON, Judge.

TUESDAY, MAY 2, 1905.

ACTION by plaintiff, as a taxpayer, to restrain the defendants, constituting the board of directors of the independent school district of Iowa City, from paying to certain booksellers any sums of money under assumed contracts with them for taking charge of and selling school books. Decree for defendants. Defendants appeal from the sustaining of a motion to strike certain allegations from defendants' answer, and plaintiff appeals from a decree in favor of defendants. Plaintiff will be treated as appellant.—*Reversed.*

*Baker & Ball,* for appellant.

*Milton Remley,* for appellees.

McCLAIN, J.— By section 2824 of the chapter of the Code relating to uniformity, purchase, and loaning of school text-books, it is provided that the board of directors of a

1. SCHOOLS: sale of books: injunction: rights of taxpayer.

school corporation may adopt text-books and contract for and buy said books, and sell the same to the pupils of their respective districts at cost, the proceeds of the sales to be turned into the contingent fund — and that books so purchased shall be under the charge of the board, who may select one or more persons within the county to keep the same for sale, and that, to insure the safety of the books and the moneys received

from the sale thereof, the board shall require of each person so appointed a bond, etc. And it is further provided, in section 2828, that, before purchasing text-books under the provisions of this chapter, it shall be the duty of the board to advertise, by publishing a notice for three consecutive weeks in one or more newspapers published in the county, and that it shall award the contract for text-books to any responsible bidder or bidders offering suitable text-books at the lowest prices. Acting in the assumed exercise of the authority conferred by these statutory provisions, the defendant directors made contracts with two booksellers in Iowa City, by which they agreed to pay to one of them $200 per year, and to another $225 per year, for selling the text-books specified by the board at the cost price; the books to be procured from the publishers thereof under arrangements made by the board with such publishers as to the prices at which such books should be furnished. The plaintiff complains that payments under these contracts are without authority of law, and asks that the board be enjoined from making such payments.

It is clear that the board has no right or authority, to enter into a contract with booksellers to sell text-books to scholars at cost in consideration of payments to be made to such booksellers out of the contingent fund of the school district, and to pay out sums of money under such contract, save as such authority may be given to the board by the statutory provisions above referred to. It is plainly not an incidental power of a school board, aside from express statutory authority, to use the money raised by taxation for school purposes in purchasing books for scholars, or paying a portion of the price which they would otherwise be required to pay for such books. The maintenance of public schools does not necessarily involve the furnishing of school-books to scholars; nor can it be implied from the authority to maintain schools that a school board may compel taxpayers in general, regardless of whether they have children

attending the schools, to pay taxes for the purpose not only of supporting schools, but of enabling the children who attend them to have books without cost, or at a lower cost than that at which the books can be procured without the expenditure of public money. Therefore the right of the defendant board to contract for the payment of money from the contingent fund to secure the sale of books to scholars at a reduced price must depend on the exercise by the school board of the authority conferred by the statute, for, if the power is not expressly conferred, or necessarily implied from the powers that are conferred, it does not exist, and any fair doubt as to the existence of the power is to be resolved against its existence. *Bush v. Dubuque,* 69 Iowa, 233; *Bellmeyer v. Independent District,* 44 Iowa, 564; *City of Keokuk v. Scroggs,* 39 Iowa, 447; *Merriam v. Moody's Ex'rs,* 25 Iowa, 163. And if the board depends for its authority upon the statute, it must exercise such power in accordance with the provisions of the statute. This is elementary, and the sole question for us to determine in this case is whether, in contracting with the booksellers, the defendant board has exercised an authority given by statute, and in at least substantial compliance with its provisions.

The statutory plan is for the school board, if it sees fit to do so, to contract for and buy books, to keep the same for sale to scholars at cost, and to select one or more persons to have charge of the sale of such books. Without doubt, as incident to the employment of such agent or agents, the board has implied power to pay them a compensation for their services. But unless there is occasion to employ such agents — that is, unless the board has bought books, and is keeping them for sale to scholars at cost — there is no occasion, and therefore no authority, for employing such agents. And the method provided for purchasing books is on competitive bids made after publishing notice in newspapers in the county. Now the method pursued by the defendant board was a wholly different one from that authorized by statute.

It did not advertise for bids or receive competitive bids. It did not purchase any books. It did not provide for the keeping of any books purchased for sale to scholars. But, on the contrary, it arranged with the publishers of certain books that the books should be supplied for sale to scholars at specified prices, and contracted with booksellers that they should, in consideration of annual payments to be made to them by the board by way of compensation, sell these books, without additional cost, to such scholars as should desire to purchase them. Perhaps the plan adopted by the board was a more satisfactory plan than that contemplated by the statute. It may be that advertisements in the local papers for bids to supply copyrighted books exclusively under the control of certain publishers would have been of no advantage in securing the books at lower prices than those at which they were offered by the publishers. It may be that it was not to the advantage of the district that it should become owner, by purchase from the contingent fund, of quantities of schoolbooks, the cost price of which, when paid by the scholars purchasing them, should be returned to the fund. It may be that the ultimate purpose of furnishing books to scholars at cost could just as well be accomplished by paying to the booksellers a lump sum in lieu of the profits which they otherwise would have realized by the sale of these books to scholars desiring to purchase them. The fact nevertheless remains, as practically undisputed, that the school board did not in any respect attempt to exercise the authority given it by statute to purchase books for sale to scholars at cost; and therefore it had no authority to contract with persons for the sale of such books, for it had no such books for sale.

Something is said by witnesses and counsel as to contracts between the board and the publishers for the supplying of books, and it appears that the school board did, in a somewhat indefinite way, authorize contracts to be made with publishers for supplying specified books at certain prices;

but there is no evidence that any such contracts were actually made, and we think it clear from the record that what the board understood it was authorizing was simply an arrangement with the publishers as to the prices at which the books should be furnished booksellers designated to sell them, for the testimony of the booksellers shows that they ordered these books from the publishers at their own discretion, in accordance with notice from the superintendent as to the number of books of each kind which would probably be needed, and that they paid for them out of their own funds, just as they paid for other books purchased by them in the usual course of trade, and that the proceeds of the sales of the books thus ordered were treated as any other funds derived by them for the sale of books in their business. It is not pretended that the board made any contract by which books were to be furnished by the publishers to the board, and paid for by it out of the contingent fund. Indeed, it appears that, when the board desired to supply books to indigent pupils without cost to them, it purchased these books from the booksellers, and paid for them at the same prices as those at which they were sold to other purchasers. As the board had no authority, therefore, to contract for the services of agents to take charge of and sell schoolbooks, any payments to such agents by way of compensation would be without authority of law, and such payments may be enjoined by any taxpayer.

The contention on behalf of the board is, however, that plaintiff, as a taxpayer, will be in no way injured by such payments, for the ultimate result, as it is argued, will be no more disadvantageous to taxpayers than though the board had pursued the statutory plan, and actually purchased the books and kept them for sale. But it was optional with the board to provide for the purchase and sale of the books. It does not follow that, if the plan pursued by the board had not been adopted, the statutory plan would have been adopted, and an equal or greater expense in the furnishing of books to scholars would have been incurred. It well may be that,

rather than adopt the statutory plan, the board would have concluded to allow the scholars to bear the entire expense of procuring schoolbooks. And the contention for the board amounts ultimately to this: That the board has the implied power to expend the contingent fund in any way it sees fit, regardless of the provisions of the statute, in reducing the cost of books to scholars. This contention, as has already been pointed out, is untenable. As compared with the plan of allowing the scholars to procure books entirely at their own expense, which plan, as already indicated, was obligatory on the board unless they saw fit to avail themselves of the statutory power, which they did not do, the plan adopted involved an expense to the taxpayers which any taxpayer may properly object to and enjoin:

There were allegations in defendants' answer, supported by the evidence, to the effect that plaintiff, although suing as a taxpayer, is a rival bookseller, with whom the board has made no contract, and also that he was at one time a party to such a contract, but, having transferred his business to another, and subsequently established a new business, is not now enjoying the privileges of such contract. The trial court held these facts to be immaterial as affecting plaintiff's right as a taxpayer to maintain action, and in this we think the ruling of the court was right. Whatever may have been the inducing motive on the part of the plaintiff to institute this action, his right to sue as a taxpayer cannot be affected thereby, and the fact that he has previously enjoyed the benefits of such contract will not estop him from complaining, as a taxpayer, of an unauthorized expenditure by the board.

2. ESTOPPEL.

The action of the trial court in striking from the defendants' answer the allegations relating to an estoppel is therefore affirmed on the defendants' appeal, but on the plaintiff's appeal the decree of the court for defendants is *reversed*.