### Town of Akron, Iowa, Appellant, v. J. E. McElligott, Appellee.

Municipal corporations:   POWER TO REQUIRE LICENSE AND BOND OF WORKMEN.   A municipality has only such powers as are conferred upon it by the statutes, or arise by necessary implication from those expressly granted, or are indispensable to the purpose of its creation.   The statutes authorizing municipalities to make regulations providing against danger from fires, electrical apparatus, etc., do not authorize a town owning an electric light plant to require workmen to procure a license, and to give a bond indemnifying the town and its superintendent of public works against liability for injury resulting from negligence in doing the work.

Same:   LIGHTING SYSTEM: REGULATIONS.   A town owning an electric light plant has power to regulate the method of wiring, to provide for

inspection of plans prior to making connections, and to require
conformity to standards reasonably necessary for safety and
efficiency.

*Appeal from Plymouth District Court.*—HON. W. D. BOISE,
Judge.

FRIDAY, JUNE 19, 1914.

THIS is a prosecution of the defendant for an alleged viola-
tion of a city ordinance of the plaintiff town. Upon trial before
the mayor he was convicted. Upon appeal to the district court
he was discharged upon the ground of the invalidity of the
ordinance. The plaintiff appeals.—*Affirmed.*

*T. M. Zink,* for appellant.

*McDuffie & Keenan,* for appellee.

EVANS, J.—Information was filed against the defendant
before the mayor of the town. Such information sufficiently
indicates the general nature of the prosecution and is as fol-
lows:

The defendant, J. E. McElligott, is accused of the crime
of doing and performing an act prohibited by the ordinances
of the town of Akron, Iowa, for that the said defendant, J. E.
McElligott, on the 26th day of September, in 1912, at the
town of Akron aforesaid, did engage in the business of wiring
for electricity a certain house in the said town of Akron, to
wit, the residence of one B. F. Wintersteen, and did wire said
house for electricity, and did request the superintendent of
public works in and for said town of Akron to inspect and
pass upon the said wiring for the purpose of supplying said
residence with electricity from the city plant, without first
obtaining a license to do such wiring, as required by part 16
of section 2 of Ordinance No. 68 of the town of Akron, and
procuring and filing the bond required therein, contrary to
the provisions of the ordinance in such case made and pro-
vided and against the peace and dignity of the town of Akron.

Such information was subsequently amended. For the

purpose of our discussion, we need not set forth such amendment. The plaintiff was the owner of its own electric light plant. For the purpose of the administration of such plant and the use of its product, it adopted certain rules and regulations in relation thereto. These were 18 in number, and were included, duly numbered, in section 2 of Ordinance No. 68. The particular parts of this ordinance which are alleged to have been violated by the defendant are rules 15 and 16, which are as follows:

Part 15—Any electric wire man wishing to do business in connection with the electric works shall before receiving license, file in the office of the town clerk a petition in writing, giving his name and that of each member of the firm, if any, and place of business, asking to become a licensed electric wire man of the said town of Akron, Iowa, stating his willingness to be governed in all respects by the rules and regulations of the electric light department now or hereinafter adopted concerning his business; said petition shall be signed by two responsible citizens of the said town vouching for the business capacity and good reputation of the applicant and for his worthiness to receive a license, which application shall be presented to the council at their first regular meeting thereafter, and if approved by the council, the mayor shall issue a license to the applicant to do business as an electric wire man in the said town of Akron, Iowa. Before receiving the license the applicant shall file in the office of the town clerk a bond with two sureties, to be approved by the town council, in the sum of one thousand dollars ($1,000.00), conditioned that he will indemnify and keep harmless the said town of Akron, Iowa, and the superintendent of public works from all liability for any accident and damages arising from any negligence or unskillfulness in doing or protecting his work or from any unfaithful or inadequate work done in pursuance of this license, and that he will pay all fines that may be imposed on him for violation of any rules or regulations adopted by said town or superintendent of public works, and in force during the time of his license. The license so issued shall be in full force and effect for a period of one year from the date of issuance thereof, unless the same be sooner revoked for cause shown.

Part 16—Any electric wire man who shall be guilty of a violation of any of the rules and regulations by the said town, or the superintendent of public works, or whose bond shall not be maintained to the satisfaction of the said town council shall forfeit his license. A forfeiture of the license of any electric wire man shall operate as a suspension of the license held by any and all copartners in the same business, or of any person in his or their employ.

The case was tried upon a stipulation of facts. This included a stipulation that the defendant "was a competent electrician, and possessed the necessary knowledge and training to perform the work which he performed," and that as such he wired two residences in the town of Akron, and that he did so without complying with the requirements of rules 15 and 16, above set forth. No question is raised but that his work was in fact properly performed, and that it complied with every requirement of the ordinance. No claim is made that any part of his work was disapproved by the inspector, nor that it could have been properly disapproved by such inspector in any other respect than that it had been done by the defendant without first complying with the requirements of sections 15 and 16. The contention of the defendant in brief is that the requirements of rules 15 and 16 transcend the authority of the municipal corporation, and that such requirements are therefore null and void. This contention was sustained by the trial court.

It is well settled that the power of a municipal corporation is only such as is conferred upon it by the statutes, and that it has no other powers than are so conferred upon it by express legislative grant, or such as arise by necessary implication as incidental to powers expressly granted, or such as are indispensable to the purpose for which the municipality was created. *Burroughs v. Cherokee*, 134 Iowa, 429; *Cherokee v. Perkins*, 118 Iowa, 405; *Logan v. Payne*, 43 Iowa, 524; *Burlington v. Baumgardner*, 42 Iowa, 673; *Keokuk v. Scroggs*, 39 Iowa, 447.

1. MUNICIPAL CORPORATIONS: power to require license and bond of workmen.

We inquire, therefore, first by what statute the power was conferred upon the plaintiff municipality to enact rules 15 and 16 above set forth. The appellant relies upon Code, sections 680, 695, and 711. These are as follows:

Sec. 680. Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days.

Sec. 695. Cities and towns . . . shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character, not inconsistent with the statutes of the state, for the protection of their property and inhabitants, and the preservation of peace and good order therein.

Sec. 711. They shall have power to make regulations against danger from accidents by fire or electrical apparatus, to establish fire limits, and to prohibit within such limits the erection of any building or addition thereto, unless the outer walls be made of brick, iron, stone, mortar, or other noncombustible material, with fireproof roofs, and to provide for the removal of any structure erected contrary to such prohibition.

That the municipality had the right to make all reasonable requirements as to the nature and method of the work to be done, and to require submission to appropriate inspection, and to require the elimination of all elements of danger or even waste, may be conceded. Nothing of this kind is attempted in the rules under consideration. These rules do not purport to deal with the merit or method of the work to be done. They merely lay artificial and arbitrary requirements *upon the persons* who are to be permitted to do the work of electric wiring. They can have no practical effect, except to limit the number of competent persons who will be permitted to do the required work. It would be grotesque to construe the cited statutes as conferring power upon a municipality to require a $1,000 bond from a competent mechanic, conditioned that he would pay all

fines which might be imposed against him for a breach of the ordinance. He could as well be required to give bond to keep the peace.

We think it too clear for extended argument that the rules in question are not within the power conferred upon a municipality either by the express terms of any statute or by necessary implication.

Appellant places reliance upon the case of *Lane-Moore Lumber Co. v. Storm Lake,* 151 Iowa, 141. That was a case involving the power of the municipality to establish fire limits, and to enforce reasonable regulations to that end. It was held that the requirement for permit in advance of building was a reasonable regulation, in that it amounted only to an approval or disapproval in advance of the fireproof character of the proposed construction. Such an inspection of proposed plans in advance operates to the advantage of the proposed builder, and operates to his protection against the loss which might ensue to him, if condemnation of his plans were withheld until after his money was expended in the construction. Such regulation in advance is also necessary to the protection of the public in such case. Danger to a district from a combustible building arises as soon as the construction is begun. To postpone inspection in such case until after construction would be to subject the district to the fire hazard during the period of construction. The only other alternative is to inspect in advance the proposed plans, and to require the process of construction to conform to the results of the inspection. We see nothing in such case which will lend support to appellant's contention herein.

No question is raised herein but that the city has full power of inspection *previous to the making of any connection with its system.* It may thereby require conformity to such standards as are reasonably necessary to safety

2. SAME: lighting system: regulations.

and efficiency. Such standards being met, and all the work being properly done, as is conceded in this case, it is beyond the concern of the city to inquire

who did it. We think the trial court rightly held to the invalidity of this part of the ordinance.

II. There were two prosecutions against the same defendant for violation of the same ordinance in the wiring of two separate buildings of different owners. Both prosecutions were dismissed by the district court. Appeals to this court were taken in both cases.· By agreement, they have both been submitted here upon one record; both cases bearing the same title.

The order of the district court in each case will therefore be—*Affirmed*. All the Judges concur.