THE PEOPLE *ex rel.* Huntley Dairy Company, Appellee, *vs.* THE VILLAGE OF OAK PARK *et al.* Appellants.

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. MANDAMUS—*when the village trustees are required to issue building permit.* If an application for a building permit is in substantial accordance with the ordinance it is the duty of the village trustees to grant the permit, even though the plans and specifications are not approved by the commissioner of public works.

2. MUNICIPAL CORPORATIONS—*doubt as to existence of power is resolved against municipal corporations.* The enumeration, in a statute, of the powers which may be exercised by a municipal corporation excludes such powers as are not enumerated, and if a doubt exists concerning the grant of power the doubt is resolved against the municipality.

3. SAME—*power of a village to require frontage consents to granting of building permits.* A village may lawfully adopt ordinances which, within reasonable limits, require consent of designated property owners as a condition for the granting of building permits; but such power does not go to the extent of requiring frontage consents as a condition precedent to the granting of permits for every business obnoxious to a residence district.

4. SAME—*what is not ground for refusing a permit to erect a building for milk distributing depot.* A village cannot refuse to grant a permit to erect a building for a milk distributing depot upon the ground that the frontage consents required by ordinance for the granting of a permit to erect any "livery, board or sale

stable, or any building to be used for any business purpose obnoxious to a residence district," have not been obtained, even though at the alley end of the milk distributing depot there is to be a stable for delivery horses used in connection therewith.

APPEAL from the Superior Court of Cook county; the Hon. CLARENCE N. GOODWIN, Judge, presiding.

FREDERICK W. PRINGLE, (PRINGLE & FEARING, of counsel,) for appellants.

RATHJE & WESEMANN, (GUY VANSCHAICK, of counsel,) for appellee.

Mr. JUSTICE WATSON delivered the opinion of the court:

A petition for a writ of *mandamus* was filed in the superior court of Cook county in behalf of the Huntley Dairy Company, the purpose being to require the corporate authorities of the village of Oak Park to issue a permit to the relator for the erection, at a certain location, of a building to be used for a milk distributing depot, with stable attached. The cause was heard in that court upon an amended petition, the answer thereto, the replication to the answer and the evidence adduced in behalf of the respective parties. The court found the issues for the relator and awarded the writ, requiring thereby the issuance of the permit within ten days from the date of the order. Appeal was prayed and allowed, and the trial judge certified that in his opinion the public interest required the cause should be appealed directly to the Supreme Court, the validity of a municipal ordinance being involved.

The proceedings raise two questions for decision here, involving the sufficiency of the relator's application for a building permit and the validity of certain portions of the village ordinances pertaining to the subject of buildings.

According to the proofs the relator first applied on January 2, 1914, for a permit to erect its building for the

purposes aforesaid at the corner of Madison street and Cuyler avenue, in Oak Park, after having asked for and obtained a copy of the ordinances relating to and regulating the erection of buildings. The application was not granted by the village authorities, a protest having been filed by the school board, objecting to the erection of the building at the place specified. Appellee contends that at the several meetings at which the subject was considered by the committee of the village trustees, the school board and appellee, an understanding was reached whereby appellee was led to believe that if it would construct its proposed building upon the site now in question, abandoning its intention to erect such building on the corner, the permit would be granted. Accordingly it purchased for $5000 a site 64.8 feet west of the corner of Lombard avenue and Madison street, fronting south on Madison street and extending north to an alley in the middle of the block, and on March 5, 1914, made application for a permit to erect the building at the new location. The application states the building is to be a one-story brick building, 50 by 125 feet, but 100 feet wide at the alley line, with press brick on the front and common brick on the other three sides, to be used as an office, a milk distributing plant and a stable for the horses and wagons used in that business, and to cost $16,000. It was accompanied by the plans and specifications originally prepared for the corner building, showing the use of press brick on three sides and common brick on one side; also by a statement, called an agreement, wherein the appellee informs the president and trustees of the village that in case the permit shall be granted it will construct the building in a good, workmanlike manner and in accordance with the ordinances of the village "as now in force" and the statutes of the State of Illinois. The application was refused.

The ordinance of the village providing for building permits and specifying the conditions on which they may

be issued consists of twenty-five sections. Those for our consideration may be summarized as follows: Section 1 prohibits the erection of any building without a permit from the board of trustees. Section 2 provides for application in writing, stating location, exterior dimensions, number of stories, estimated cost, purpose or use, and material for construction of the proposed building. This section also requires the applicant for a permit to file plans and specifications, which shall first have the approval of the commissioner of public works, and shall show such details of construction as are usually shown in building plans and specifications and as are specified in said section. Section 4 has been amended by the passage of another ordinance and is now in terms following:

"Sec. 4. No livery, boarding or sale stable, or other building to be used for any business purpose which may be obnoxious to a residence district, shall be erected or maintained in any block in the village of Oak Park in which one-third of the buildings thereon, or one-third of the buildings fronting on the same street in the block opposite thereto, are devoted exclusively to residence purposes, without the written consent of every property owner owning premises any part of which approaches within a radius of three hundred and fifty (350) feet of the proposed stable or building; and no gas house or gas reservoir shall be erected or maintained in any block in the village of Oak Park in which one-third of the buildings thereon, or one-third of the buildings in the block opposite thereto, are devoted exclusively to residence purposes, without the written consent of every property owner owning premises any part of which approaches within one thousand (1000) feet of the proposed gas house or gas reservoir."

We are of the opinion the evidence shows the application of March 5, together with the original plans and specifications as modified by the terms of the application and with the so-called agreement as to the method of construc-

tion, constitutes a substantial compliance with the provisions of sections 1 and 2 of the building ordinance. True, the plans did not have the approval of the commissioner of public works and appellee was mistaken or misinformed as to the person who was the incumbent of that office; nevertheless the commissioner is shown to have been present at the meetings of the committee of the trustees when the plans in question were under consideration and to have withheld his approval thereof. He is not a party to the suit nor does he need to be, for under section 1 of the ordinance it is the duty of the trustees to grant the permit when the application is in substantial accordance with the provisions of the ordinance, as we have above held the application under consideration to be, and the failure of the commissioner to give his approval thereto will not relieve the trustees from performance of the duty imposed upon them.

The powers given by statute to the city council in cities and to the president and board of trustees in villages are enumerated in section 1 of article 5 of chapter 24, (Hurd's Stat. 1913, p. 270,) and amongst them are the powers delegated in clauses or sub-sections 82 and 84 of section 1, which are as follows:

"*Eighty-second*—To direct the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, blacksmith shops, foundries, machine shops, garages, laundries, and bathing beaches, within the limits of the city or village."

"*Eighty-fourth*—To compel the owner of any grocery, cellar, soap or tallow chandlery, tannery, stable, pig-sty, privy, sewer or other unwholesome or nauseous house or place, to cleanse, abate or remove the same, and to regulate the location thereof."

In *Merrill* v. *Town of Monticello,* 138 U. S. 673, the court quoted with approval a proposition laid down by Judge Dillon, and which also has been approved by this

court, to-wit: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable."

Does the attempted exercise of power by section 4 of the building ordinance, as amended, fall within either of the three classifications mentioned in the above quotation: powers expressly granted, fairly impliable from the express powers granted or essential to the civic purposes of the village?

If a doubt exists concerning the grant of power, the doubt is, by the authorities, to be resolved against the municipality; (*Merrill* v. *Town of Monticello, supra; City of Chicago* v. *Ross,* 257 Ill. 76; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264;) and the enumeration of the powers operates to exclude such as are not enumerated. (*People* v. *City of Chicago,* 261 Ill. 16; *City of Cairo* v. *Bross,* 101 id. 475.) By clause 82 power is expressly given to direct the location and regulate the use and construction of livery stables but not of private stables. Clause 84 grants power to compel the owner of any stable or other unwholesome or nauseous house or place to cleanse, abate or remove the same and to regulate the location thereof.

It is urged by appellants that municipalities may lawfully require frontage consents as precedent to granting a permit to establish "a business obnoxious to a residence district," and the cases cited in support of the proposition are, *City of Chicago* v. *Stratton,* 162 Ill. 494, and *People* v. *Ericsson,* 263 id. 368. Those authorities are not as broad as the appellants claim. In the *Stratton case* this court held it not unlawful and not a delegation of power by a city to require, by ordinance, the consent of property own-

ers as a condition precedent to the issuance of a permit for the construction of a building and the maintenance of a business included in the express terms of clause 82, *supra,* to-wit, a livery stable. In the *Ericsson case* the same principle was announced with reference to an ordinance concerning the erection of garages, this ordinance requiring consent of property owners, and also prohibiting their erection within two hundred feet of any church, hospital or school. This court decided in *People* v. *Busse,* 248 Ill. 11, that a petitioner was not entitled to a writ of *mandamus* unless all the valid requirements of the ordinances entitling him to a permit had been complied with, and that as the courts do not take judicial notice of municipal ordinances, he must aver and prove the ordinances themselves as well as his compliance therewith. In that case, as under the ordinances in evidence in the case at bar, frontage consents were required, but the building and business there under consideration were among those expressly included within the provisions of section 1 of article 5, chapter 24, of the Revised Statutes.

Under the authorities cited, and others which might be cited, it has become an established rule in Illinois that in the exercise of the powers granted the village may lawfully adopt ordinances which, within reasonable limits, require the consent of designated property owners as a condition of granting building permits. We do not, however, agree with the contention of appellants that the statute gives the municipality the same rights as to the regulation and location of stables as to the regulation and location of livery stables and garages.

Appellants also invoke the police power of the municipality in support of the ordinance in question, and cite in support of their contention that the ordinance is a reasonable exercise of the police power, the decision of this court in *People* v. *City of Chicago, supra.* In that case the city of Chicago required, by an appropriate ordinance, written

consent of the majority of property owners on both sides of the street. in a given block before a permit could be issued to locate or build any store for the retail sale of merchandise in the block. The court held, in construing the ordinance with reference to clause 82, *supra,* that all the subjects there enumerated are of a character necessarily detrimental to the comfort and well being of persons who are required to live near them, or may become so when improperly and carelessly carried on. Retail stores are not included in the enumerated occupations, and the city has no power to declare them nuisances *per se* when it is common knowledge they are not nuisances in fact. We hold the same reasoning applies to the milk distributing station under the evidence in the case at bar, even though at the alley end of the building there is to be erected a stable for the delivery horses used in connection therewith. In the same case the court announced a doctrine which we apply with approval in the present case, in the following language: "There are certain subjects over which the city has control, and as to these subjects it may pass all necessary police ordinances. * * * But even if the municipality is clothed with the whole police power of the State it would still not have the power to deprive a citizen of valuable property rights under the guise of prohibiting or regulating some business or occupation that has no tendency whatever to injure the public health or public morals or interfere with the general welfare. * * * The owner of property has the constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health and comfort or general welfare of the public." See, also, *Haller Sign Works* v. *Training School,* 249 Ill. 436.

We find ourselves unable to sustain the provisions of the ordinance in question of the village of Oak Park as applicable to the building proposed to be erected, at the

location specified, by the appellee, and we therefore hold the appellee was and is entitled to the permit applied for.

In view of the conclusion reached by this court as hereinbefore set forth, the proof as to whether the locality under consideration is a residence district becomes comparatively unimportant, but it is, nevertheless, of interest to ascertain what the facts are in that respect as disclosed by the record. We find Madison street in that general locality is a business street. In the block in question, being on Madison street between Harvey and Lombard avenues, there are no buildings of any character on either side of the street. On the north side of the alley, fronting away from Madison street, are two or three residences in the block, said block being 450 feet long from north to south. There are but few buildings of any character in the vicinity, close to the proposed structure.

The superior court of Cook county was not in error in awarding the writ, and its judgment is therefore affirmed.

*Judgment affirmed.*