INSPECTOR OF BUILDINGS OF LOWELL *vs.* JOSEPH STOKLOSA.

Middlesex.    March 11, 1924. — October 16, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Building Law*, Zoning ordinance.  *Constitutional Law*, Police power: municipal zoning.  *Supreme Judicial Court*, Advisory opinion.  *Municipal Corporations*, By-laws and ordinances.

In determining the question of the constitutionality of G. L. c. 40, §§ 25–30, raised on a report by a judge of the Superior Court of a suit in equity to enforce the provisions of an ordinance based on that statute, the justices of this court gave to the questions raised by the record the most careful, thorough and painstaking investigation and reflection which the sense of judicial obligation can impose, guarding themselves most sedulously against any influences flowing from their previous consideration of that question when it was presented to them by a request of the House of Representatives under Mass. Const. c. 3, art. 2, while the petition for the enactment of the legislation was pending.

Art. 60 of the Amendments to the Constitution of the Commonwealth and G. L. c. 40, §§ 25–30, are not violative of any provision of the Constitution of the United States nor obnoxious to any provision of that Constitution or of the Constitution of this Commonwealth.

A division of a city into business and residential districts by ordinances specifying as a business district any building district in which " not less than one half the ground floor frontage of both the district and the frontage on the other side of the street immediately opposite said district are at the time this ordinance goes into effect devoted to business or industry other than farming, gardening, or the conduct of a boarding or lodging house, and a building district which is manifestly intended to be devoted to business or industry," and specifying as residential districts all other building districts not described in the foregoing language, is not unreasonable.

Provisions of an ordinance of a city adopted under G. L. c. 40, §§ 25–30, following the above described provisions defining what should be a business district and what should be a residential district, were in substance that no building in a residence district could be erected or altered for purposes of business or industry unless upon application accompanied by written consents of owners of not less than three fourths of all lands used for other than business or industrial purposes which fronted on the same side of the street and lay between the two intersecting streets nearest to and on either side of the land in question, or within four hundred feet on either side thereof in case the nearest intersecting streets were more than that distance therefrom, and also of all lands fronting upon the other side of the street and directly opposite

the land in question, and of all lands immediately in 'the rear thereof; and unless after a public hearing the city council should so order. *Held,* that

(1) It must be presumed that the city council enacted the ordinance with a purpose to subserve the public welfare;

(2) There was no invalidity in the provision enabling the city council for the common good to relax the rigidity of the bounds of the districts if and when three fourths of the landowners in the immediate neighborhood so requested;

(3) There was not in the ordinance a delegation of legislative power;

(4) The described provisions were not unconstitutional.

BILL IN EQUITY, filed in the Superior Court on December 11, 1923, by the inspector of public buildings of the city of Lowell, seeking a decree enjoining the defendant from erecting a tailor shop at 318 High Street in Lowell in alleged violation of an ordinance enacted pursuant to G. L. c. 40, § 25.

The suit was heard in the Superior Court by *Hammond,* J., on the pleadings and an agreed statement of facts.

The ordinance establishing certain business districts, upon which the plaintiff relied, was passed by the city council of Lowell on September 14, 1922, and read as follows:

"Section 1. The City of Lowell is hereby divided into building districts as follows: All lands locating or fronting upon each section of each accepted street between the boundary lines of each two adjacent intersecting streets or between the end of said street and the first adjacent intersecting street shall comprise a building district.

" Section 2. A building district in which not less than one-half the ground floor frontage of both the district and the frontage on the other side of the street immediately opposite said district are at the time this ordinance goes into effect devoted to business or industry other than farming, gardening, or the conduct of a boarding or lodging house, and a building district which is manifestly intended to be devoted to business or industry, shall be known as a ' Business District.'

" Section 3. All of said building districts not described in section 2 shall be known as Residence Districts.

" Section 4. Except as hereinafter provided no parcel

of land lying in a Residence District and not at said time devoted to any business or industry, other than those specified in section two, shall hereafter be used therefor, and no permit shall be issued for the erection, alteration or conversion of any building for or to such use upon any such parcel.

" Section 5. A permit may be issued for the erection in a Residence District of a building for the purposes of any business or industry, or for the alteration or conversion of a building in such district for or to such purposes, provided that there be filed with the application for such permit written consents thereto signed and acknowledged by the owners or legal representatives of the owners of not less than three-fourths of all lands used for other than business or industrial purposes which front on the same side of the street and which lie between the two intersecting streets nearest to and on either side of the land in question or within four hundred feet on either side thereof in case the nearest intersecting street is more than that distance therefrom, and also of all lands fronting upon the other side of the street and directly opposite said land, and of all lands immediately in the rear thereof; and provided further that the City Council shall after public hearing so order.

" Section 6. All ordinances and parts of ordinances inconsistent herewith are hereby repealed."

It was agreed that Lowell was a city of about one hundred and twenty thousand inhabitants; that the defendant was the owner of a parcel of real estate at the corner of Oak Street and High Street in Lowell, " which parcel is in a residence district "; that " High Street is a public way running southerly from Bartlett to Rogers Street. Said High Street is about three quarters of a mile in length. On the northerly part thereof there are about four buildings, the first floors of said buildings being used as stores. The building of the respondent faces on High Street. On that side of the street upon which his building faces and northerly therefrom at a point less than four hundred feet, there is a store located. All of said places used for commercial purposes were used for such purposes prior to the adoption of the aforesaid ordinance. There is no building on said street southerly

from the premises of the respondent devoted in any part to commercial or industrial purposes. The buildings on said High Street consist of single and double family dwellings and tenement houses designed for occupancy by four or more families."

It further was agreed that on September 22, 1923, the respondent filed with the city clerk of Lowell a petition dated August 4, 1923, seeking permission to erect and construct a tailor shop at the location stated. The petition did not have the necessary number of signatures of property owners required by § 5 of the ordinance. The petition was read in the city council on September 25, 1923. There was no public hearing. On that day the council authorized the inspector of buildings to issue a permit in accordance with the petition, and on the next day the city clerk notified the respondent of the action taken by the council. After the permit was issued, the inspector of buildings ordered the respondent to cease operations. On October 13, a petition signed by several remonstrants, property owners on High Street, was filed with the city clerk protesting against the erection of the tailor shop. A public hearing was given, after which the matter was referred by the council to the city solicitor and the inspector of buildings.

The respondent contended that the provisions of G. L. c. 40, §§ 25–30, were unconstitutional and further that the ordinance was invalid, because it illegally attempted to delegate powers and was beyond the scope of the statute.

At the request of the parties, the trial judge reported the case to this court upon the bill, answer, and agreed statement of facts for determination of the following questions: (1) " The constitutionality of the statute in pursuance of which the ordinance annexed to the petitioner's bill was passed "; (2) " The validity of the aforesaid ordinance." The report stipulated that " if the statute be unconstitutional, or if the ordinance be invalid, the petition is to be dismissed; otherwise the prayer of the petitioner for a restraining order is to be granted."

G. L. c. 40, §§ 25–30, are as follows:

" Section 25. A city or town may by ordinance or by-

law restrict buildings to be used for particular industries, trades, manufacturing or commercial purposes to specified parts of the city or town, or may exclude them from specified parts of the city or town, or may provide that such buildings, if situated in certain parts of the city or town, shall be subject to special regulations as to their construction or use.   A city or town may also by ordinance or by-law provide that certain kinds of dwelling houses and tenement houses shall be restricted to specified parts of the city or town, or shall be excluded from specified parts of the city or town, or that dwelling houses or tenement houses situated in specified parts of the city or town shall conform to certain regulations in respect to their construction or use which do not apply to such buildings in other parts of the city or town.   For the above purpose the city or town may be divided into districts or zones, and the construction and use of buildings in each district or zone may be regulated as above provided. The provisions of this section shall be carried out in such manner as will best promote the health, safety, convenience and welfare of the inhabitants, will lessen the danger from fire, will tend to improve and beautify the city or town, will harmonize with its natural development, and will assist the carrying out of any scheme for municipal improvement put forth by any municipal planning board or board of survey or other like authority.   Due regard shall be paid to the characteristics of the different parts of the city or town, and the ordinances or by-laws established hereunder in any city or town shall be the same for zones, districts or streets having substantially the same character.

" Section 26.   No ordinance shall be enacted under the preceding section in any city until after a public hearing thereon has been held, notice of which shall be published, at least thirty days before the hearing in a newspaper published in such city, or in the county if no newspaper is published in the city.   The hearing shall be given by the city council or by such officer, board, commission or committee as may be designated or appointed for the purpose by the city council.

" Section 27.   The superintendent of buildings, or the

officer or board having supervision of the construction of buildings or the power of enforcing the municipal building laws, or if in any town there is no such officer or board, the selectmen, shall withhold a permit for the construction or alteration of any building if the building as constructed or altered would be in violation of any ordinance or by-law enacted under section twenty-five; and municipal officers shall refuse any permit or license for the use of a building which use would be in violation of any ordinance or by-law enacted under said section. Any person aggrieved by the refusal of a permit under this section may appeal to the municipal officer or board to which a right of appeal lies from decisions under the building laws of the city or town, and if there is no such officer or board, then the appeal shall lie to the city council or to the selectmen, or to such officer, board, commission or committee as shall be designated or appointed by the city council or by the selectmen to act as a board of appeals hereunder.

" Section 28. The Superior Court shall have jurisdiction to enforce the provisions of section twenty-five and may restrain by injunction any violations thereof.

" Section 29. An ordinance or by-law enacted under section twenty-five shall not apply to existing structures nor to the existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose, or in a manner, substantially different from the use to which it was put before alteration. A building used or to be used by a public service corporation may be exempted from the operation of an ordinance or by-law enacted under section twenty-five if, upon a petition of the corporation, the department of public utilities shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

" Section 30. No ordinance or by-law enacted under section twenty-five shall be repealed or modified except after reasonable notice of the proposed repeal or modification, and an opportunity to the objectors to be heard thereon. If in a city any owner of real estate which would be affected

by the proposed repeal or modification objects thereto, it shall not be repealed or modified except by a unanimous vote of all the members of the city council; and in no case shall such an ordinance or by-law be repealed or modified except by a two thirds vote of all the members of the city council, or by a two thirds vote of a town meeting."

*P. J. Reynolds,* (*J. M. O'Donoghue* with him,) for the plaintiff.

*W. D. Regan,* for the defendant.

RUGG, C.J.   This is a suit in equity by the inspector of buildings of Lowell to restrain the defendant from erecting a certain building for business purposes in that city in violation of an ordinance enacted pursuant to G. L. c. 40, § 25. That section authorizes any city or town by ordinance or by-law to divide its territory into districts or zones, to restrict the use of buildings for trade and industry, for tenement houses and for dwelling houses to designated areas and to require such buildings to conform to established regulations as to construction and use. This authority and the limitations and regulations for its exercise are set out with some particularity in G. L. c. 40, §§ 25–30, both inclusive.

The constitutionality of the statute is assailed by the defendant. Manifestly the statute was intended to be enacted pursuant to the authority conferred by art. 60 of Amendments to the Constitution of this Commonwealth, which is in these words: "The general court shall have power to limit buildings according to their use or construction to specified districts of cities and towns." The justices were requested to give their opinion to the honorable House of Representatives as to the constitutionality of the sections of the statute here in question while they were pending and before their enactment. The opinion was expressed that the proposed act, now embodied in substance in the sections here attacked, would not violate either the Constitution of this Commonwealth or that of the United States, and that art. 60 of the Amendments to the Constitution of this Commonwealth, in that it authorized the enactment of the proposed statute, was in no respect in contravention of any provision of the Constitution of the United States. *Opinion of the Justices,* 234 Mass. 597.

Such opinions are rendered in accordance with the mandate of Mass. Const. c. 3, art. 2, and express views resting upon judicial investigation and consideration. They are advisory in nature, are given without the benefit of argument, are liable to error and must be regarded not as conclusive and binding but subject to reëxamination and revision. When called upon to decide the same questions coming before them as a court, the justices guard themselves most sedulously against any influences flowing from their previous consideration. *Green* v. *Commonwealth*, 12 Allen, 155, 164. *Young* v. *Duncan*, 218 Mass. 346, 351. *Perkins* v. *Westwood*, 226 Mass. 268, 272. *Loring* v. *Young*, 239 Mass. 349, 361. There has been given to the questions now presented the most careful, thorough and painstaking investigation and reflection which the sense of judicial obligation can impose.

The conclusion now reached in the case at bar is that art. 60 of the Amendments, so far as it authorizes the enactment of the sections of the statute here attacked, is not violative of any provision of the Constitution of the United States and that the sections of the statute are not obnoxious to any provision of the Constitution of this Commonwealth or of that of the United States. The reasons which now seem decisive and the supporting authorities are stated at large in the advisory opinion. It is hardly worth while to expand the bulk of our reports by covering the same ground again. Without further present discussion, summarization, amplification, restatement or paraphrase, that opinion is adopted as the judgment of the court in the case at bar. It covers every constitutional phase which has been argued or which has occurred to us.

That conclusion is supported by numerous cases, most of which have been decided since that opinion was rendered. *Lincoln Trust Co.* v. *Williams Building Corp.* 229 N. Y. 313. *Ware* v. *Wichita*, 113 Kans. 153. *Des Moines* v. *Manhattan Oil Co.* 193 Iowa, 1096. *State* v. *Harper*, 182 Wis. 148. *State* v. *New Orleans*, 154 La. 271. *Salt Lake City* v. *Western Foundry & Stove Repair Works*, 55 Utah, 447. *State* v. *Houghton*, 142 Minn. 28. *State* v. *Houghton*, 144 Minn. 1. *Ex parte Quong Wo*, 161 Cal. 220.

There are decisions to the contrary. *Spann* v. *Dallas,* 111 Texas, 350. *People* v. *Chicago,* 261 Ill. 16, 20. *State* v. *McKelvey,* 301 Mo. 130. *Handy* v. *South Orange,* 118 Atl. Rep. 838. *Vernon* v. *Westfield,* 98 N. J. L. 600, compare *Cliffside Park Realty Co.* v. *Cliffside,* 96 N. J. L. 278. *Ambler Realty Co.* v. *Euclid,* 297 Fed. Rep. 307. Other decisions having a contrary appearance may rest upon other grounds. *Byrne* v. *Maryland Realty Co.* 129 Md. 202. *Clements* v. *McCabe,* 210 Mich. 207. *State* v. *Edgecomb,* 108 Neb. 859. None of them were decided in view of constitutional provisions like those of art. 60 of the Amendments. So far as they are at variance with the views here expressed and set forth at length in *Opinion of the Justices,* 234 Mass. 597, we are not inclined to follow them.

It is urged that the ordinance transcends the authority conferred by the statute and hence is invalid. This contention requires some analysis of the ordinance. Its first section defines · a building district as including " all lands locating or fronting upon each section of each accepted street between the boundary lines of each two adjacent intercepting streets or between the end of said street and the first adjacent intersecting street." No argument against the validity of this section has been addressed to us. It seems sufficiently definite to identify land with reference to streets.

The second section creates as a business district any building district in which " not less than one-half the ground floor frontage of both the district and the frontage on the other side of the street immediately opposite said district are at the time this ordinance goes into effect devoted to business or industry other than farming, gardening, or the conduct of a boarding or lodging house, and a building district which is manifestly intended to be devoted to business or industry." The third section provides that all other building districts not described in § 2 shall be known as residence districts.

A division into business and residence districts on the basis thus provided is not unreasonable. In substance it was upheld in *Welch* v. *Swasey,* 193 Mass. 364, affirmed in 214 U. S. 91. *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30, 32. There is nothing in the agreed statement

of facts which indicates that the ordinance operates oppressively or inequitably. Every such division may injure somebody; but if it appears to have been made in the public interest and to be reasonable in its general features and there is nothing outside the ordinance to indicate that its purpose was to persecute or abuse, it will not be stricken down merely because a particular individual may think himself aggrieved or may be in truth injured. The exceptions in § 2 do not affect the defendant. Difficulties which may arise in the interpretation of this ordinance as to other states of facts do not render the ordinance invalid.

The fourth section provides that land and buildings within the residence district and not at the time of the passage of the ordinance devoted to business or industry, other than those specified in § 2, shall not be used for, or altered or converted to, business uses except as provided in the section following. The effect of this section is simply to insure a reasonable permanency to the building districts in conformity to their initial establishment. It secures the landowner against changes except upon the observance of certain definite formalities. If these are reasonable, there is no just ground for complaint.

The main attack centers on section 5 of the ordinance. Its provisions are in substance that no building in a residence district can be erected or altered for purposes of business or industry unless upon application accompanied by written consents of owners of not less than three fourths of all lands used for other than business or industrial purposes which front on the same side of the street and which lie between the two intersecting streets nearest to and on either side of the land in question or within four hundred feet on either side thereof in case the nearest intersecting street is more than that distance therefrom, and also of all lands fronting upon the other side of the street and directly opposite said land, and of all lands immediately in the rear thereof; and provided further that the city council shall after public hearing so order.

The law as to the validity of ordinances respecting limitations upon the use of real estate by the exercise of the police

power was stated in *Dobbins* v. *Los Angeles*, 195 U. S. 223, at 235, 236, 237, in these words: " It may be admitted that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether under the guise of enforcing police regulations there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property. . . . ' The State has undoubtedly the power, by appropriate legislation, to protect the public morals, the public health and the public safety, but if, by their necessary operation, its regulations looking to either of those ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void.' " The facts in the case there under consideration were sufficiently analogous to those here urged to render this statement of principle applicable. We accept it as controlling.

The ordinance in the case at bar establishes the business districts and the residential districts by plain and unequivocal words. No popular vote of landowners or residents is required as a prerequisite. It must be presumed that the city council enacted the ordinance with a purpose to subserve the public welfare. If there were provision that any area should be restricted upon request of certain persons more or less interested in the subject, it would be invalid. *Eubank* v. *Richmond*, 226 U. S. 137, 144. But where districts are established by some rational general rule, there is no invalidity in a provision which enables a public board, in

the exercise of its sound judgment for the common good, to relax the rigidity of the bounds of those districts if and when three fourths of the landowners in the immediate neighborhood as bounded by the ordinance request. The ordinance in the case at bar does not seem to us so objectionable as the one upheld in *Cusack Co.* v. *Chicago,* 242 U. S. 526. The consent of certain landowners required by the present ordinance is merely a condition precedent to the exercise of power by the city council to hold a public hearing upon an application to permit a building within a residence district to be used for business or industrial purposes and to decide whether to order or to refuse the issuance of such a permit. This is the establishment of a safeguard for the owners of homes within residential districts. It is not a delegation of legislative power. It does not offend against any of the principles declared and applied in the cases upon which the defendant relies, such as *Commonwealth* v. *Maletsky,* 203 Mass. 241, *Kilgour* v. *Gratto,* 224 Mass. 78, *Cawley* v. *Northern Waste Co.* 239 Mass. 540, *Commonwealth* v. *Atlas,* 244 Mass. 78, and many similar decisions.

*Prayer of the plaintiff for a restraining order to be granted.*