W. J. DOWNEY et al., Appellees, v. CITY OF SIOUX CITY et al., Appellants.

No. 39865.

OCTOBER 22, 1929.

*Henry C. Shull, Thomas J. Griffin, S. F. Wadden,* and *Jepson, Struble & Sifford,* for appellants.

*Burgess & Gill,* for appellees.

ALBERT, C. J.—At all times in controversy herein, plaintiff W. J. Downey was the owner of Lot 9 and the south half of Lot 10 in Block 8 in Pierce's Addition to the city of Sioux City. These lots are located at the northeast corner of the intersection of Twenty-eighth and Jackson Streets, which intersect at right angles. In March, 1928, plaintiff proposed to construct and erect on said lots a ten-apartment multiple dwelling, ordinarily known as an "apartment house." Plans and specifications were duly prepared and submitted to the proper city officials and approved. Plaintiff then made application to the building inspector for a permit to erect said building, which permit was refused. Notwithstanding this, plaintiff commenced excavating for said building, and at the same time, brought this action, joining his contractor therein as plaintiff, praying that the city be restrained from hindering or interfering with the construc-

tion of said residence apartment building on said lots, etc., and that a mandatory injunction issue, directing that the city and the building inspector forthwith issue to plaintiff a building permit for the erection of said building on said lots.

In the original case, four property owners filed a petition of intervention, praying that plaintiff's petition be dismissed, and asking a writ of injunction against the plaintiff, restraining him from erecting on said property the proposed building without securing the necessary permit therefor.

Defendants answered, setting up certain statutes and ordinances of the city of Sioux City, pleading that the plaintiff had not complied therewith, and praying that plaintiff's petition be dismissed. Plaintiff pleaded that the ordinances in controversy are null and void; whereupon the case went to trial, resulting in a decree in favor of the plaintiff and dismissing the petition of interveners.

The city of Sioux City had an ordinance designated as No. L-1214, known as the "Building Code of Sioux City," which ordinance, among other things, divided the city into three districts and provided for the regulation of buildings within these districts and prohibited certain structures unless written consent was first obtained from the owners of 60 per cent of the residence property within certain limits set out in the ordinance. On April 21, 1928, the city passed an amendment to the aforesaid ordinance, known in the record as No. O-119, which amendment added Class A and Class B multiple dwellings to the structures prohibited within District No. 3, plaintiff's property being within the bounds of the aforesaid district. Plaintiff's application for a permit was refused by the building inspector on the ground that the written consent of the aforesaid 60 per cent of the residence property owners within the limits provided by the ordinance was not filed.

The turning question in the case is whether or not the ordinance No. L-1214, as amended by Ordinance No. O-119, is valid. Stated briefly, (1) Had the city the power to prohibit the building of an apartment house within the aforesaid District No. 3; or (2) had it the power to provide that no such building should be erected unless written consent had been filed, as in the ordinance provided?

It is fundamental that the city had no inherent power to

legislate on the question involved, and that it had only such power to legislate on this question as is expressly given by the  legislature of the state, or necessarily implied for the purpose of carrying out the power granted by the state. In the case of *Clark v. City of Des Moines,* 19 Iowa 199, l. c. 212, this court said:

"It is a familiar and elementary principle that municipal corporations have and can exercise such powers, and *such* only, as are expressly granted, and such incidental ones as are necessary to make those powers available and essential to effectuate the purposes of the corporation; and these powers are strictly construed."

This statement almost verbatim is reiterated in the case of *City of Keokuk v. Scroggs,* 39 Iowa 447, at 450. See, also, *City of Des Moines v. Gilchrist,* 67 Iowa 210; *Heins v. Lincoln,* 102 Iowa 69, at 76; *Aldrich v. Paine,* 106 Iowa 461, 467; *Burroughs v. City of Cherokee,* 134 Iowa 429, 431; *Bear v. City of Cedar Rapids,* 147 Iowa 341, 345; *Town of Akron v. McElligott,* 166 Iowa 297, at 300. In the case of *Ries v. Hemmer,* 127 Iowa 408, it is said:

"* * * if the power is not expressly conferred, or necessarily implied from the powers that are conferred, it does not exist, and any fair doubt as to the existence of the power is to be resolved against its existence."

See, also, 19 Ruling Case Law 800, Section 108; 43 Corpus Juris 205, Section 204.

Or, to state it in another way, in the absence of an expressed or necessarily implied power, municipal corporations cannot lawfully exercise the police power. 43 Corpus Juris 206, and cases cited in Note 55. It is also fundamental that such power must be exercised so as not to infringe arbitrarily or unnecessarily upon private rights. *City of Centerville v. Miller,* 57 Iowa 56; *Bush v. City of Dubuque,* 69 Iowa 233; *City of Hawarden v. Betz,* 182 Iowa 808; 43 Corpus Juris 230, Section 230. But a regulation is not invalidated by the mere fact that private rights are restricted, or that loss will result to individuals from its enforcement. *City of Shenandoah v. Replogle,* 198 Iowa 423;

*Rehmann v. City of Des Moines,* 200 Iowa 286. We turn, therefore, to the statutes of the state, to see just what power the city possesses on this subject.

Section 5756, Code of 1927, provides:

"Cities and towns, including cities under the commission form of government, shall have the power to adopt by ordinance a building code, providing for the districting of such cities into one or more districts, establishing reasonable rules and regulations for the erection, reconstruction, and inspection of buildings of all kinds within their limits * * *."

Is there any power conferred upon the city by this section of the Code authorizing it to enact an ordinance containing the conditional prohibition provided by Ordinance L-1214?

It is fundamental that the right conferred of the power to regulate does not authorize the passage of an ordinance prohibiting. *City of Shenandoah v. Replogle,* supra; *Rehmann v. City of Des Moines,* supra; 43 Corpus Juris 252;  also note to 40 A. L. R. 922. Under any reasonable construction, could the aforesaid statute authorize the city to pass an ordinance prohibiting the erection of apartment houses in District No. 3? Of course, an ordinance passed within the limits of the power given must be a valid ordinance. The statute provides for the making of reasonable rules and regulations by the city "for the erection * * * of buildings of all kinds within their limits." This statute contemplates that buildings shall be erected, but the city is given the power to make rules and regulations as to the manner and method of construction and the material used in the construction, location on lots, and similar matters. These matters were undoubtedly fully within the power above conferred, but the right to exercise the power to regulate these matters cannot be construed into a power to prohibit erection of buildings. It is our conclusion that there is nothing in this statute above quoted authorizing the city to pass an ordinance prohibiting the erection of apartment houses in the aforesaid district.

It is insisted, however, that, by reason of Chapters 324 and 325, Code of 1927, such power is conferred upon the city.

Chapter 325 provides for proceedings by which restricted

residential districts may be created, upon the filing of a petition by 60 per cent of the owners of the residences in the district sought to be affected. When these proceedings are carried to completion, the city is then authorized to designate and establish such restricted residential district, and to establish reasonable rules and regulations for the erection, etc., of buildings of all kinds within said district, as well as the use and occupancy of said buildings, and to *prohibit* the erection of buildings or other structures (except certain ones in which we are not interested) without first securing a permit therefor.

It will be noted that the distinction between these sections of the statute and the one first quoted is that here the city is given the power, by ordinance, to regulate the use and occupancy of such buildings and to prohibit buildings without a permit. No such proceedings were had in the instant case, and therefore the powers (whatever they may be) of the city under Section 6475 are not operative in the instant case.

It is probably true that, under Chapter 324, the city would have the power, under the general zoning plan therein provided, to prohibit the erection of this apartment house; but the trouble with the situation is that, at the time in question herein, the city of Sioux City had not availed itself of Chapter 324, and had not passed a general zoning ordinance for said city; and the powers conferred in that chapter are limited in their operation to the general purpose and scheme of a general zoning ordinance, and are not available to be taken from Chapter 324 and made the basis for the ordinance in question. They are only available as a part of the general plan of zoning as provided in Chapter 324. In other words, nothing contained in Chapters 324 or 325 conferring the power upon the city can be utilized to support an ordinance unless the plans and proceedings marked out in the chapters are followed.

Ordinance No. O-119 in part reads as follows:

"No building shall hereafter be erected or used as * * * Class A or Class B multiple dwelling * * * unless written consent shall have first been obtained from the owners of 60 per cent of all other residence property abutting on the same street as the proposed building or building site or lot, and lying between the two nearest cross streets adjacent thereto and where such building or building site or lot is located upon or within 50

feet of the corner of any block or tract of ground located at the intersection of two streets or public highways, then the person or persons applying for such permit must first obtain written consent from the owners of 60 per cent of all other residence property abutting on both of such intersecting streets and laying between the intersection and the two nearest cross streets adjacent thereto.''

It will be noted that the terms added in the amendment to the ordinance are made to cover Class A and Class B multiple dwellings. These terms first appeared in our Code in Chapter 324, Code of 1927; but they are words of quite common use, and are readily understood to cover dwellings in which more than one family reside. It is apparent that this amendatory ordinance was passed for the purpose, among other things, of prohibiting the construction of apartment houses within the prescribed district, presumably on the theory that, if there is any doubt about such prescription in Ordinance L-1214, it should be made definite and certain by this amendment. We have already expressed our conclusion that the city lacked power to pass an ordinance of this kind, which amounts to the prohibiting of the erection of apartment houses in this district.

It is suggested, however, that the prohibitory part is only conditional, and that, in event that the person proposing to construct an apartment house secures the written consent of 60  per cent of the property owners, as provided in the ordinance, he may then construct such building. There is, therefore, no hard and fast prohibition against the construction of such apartment buildings in District No. 3. This contention is assaulted on the ground that it amounts to a delegation of legislative power to adjoining and adjacent property owners, and is therefore void.

Generally speaking, it has been held that regulations or ordinances requiring the consent of property owners, or a percentage thereof, in the vicinity for the erection or use of particular kinds of buildings are invalid, on the ground that such is a delegation of governmental power to private citizens, and deprives the applicant of equal protection of the law, without due process of law, is a delegation of legislative power, and may have the effect of permitting discrimination in behalf of

certain individuals, as against others entitled to equal rights. *State ex rel. Omaha Gas Co. v. Withnell*, 78 Neb. 33 (110 N. W. 680); *Dangel v. Williams*, 11 Del. Ch. 213 (99 Atl. 84); *City of St. Louis v. Russell*, 116 Mo. 248 (22 S. W. 470); *People ex rel. Goldberg v. Busse*, 240 Ill. 338 (88 N. E. 831); *Wasilewski v. Biedrzycki*, 180 Wis. 633 (192 N. W. 989); *Levy v. Mravlag*, 96 N. J. Law 367 (115 Atl. 350); *In re Application of Wertheimer v. Schwab*, 124 Misc. Rep. 822 (210 N. Y. Supp. 312); *Tilford v. Belknap*, 126 Ky. 244 (103 S. W. 289); *State ex rel. Nehrbass v. Harper*, 162 Wis. 589 (156 N. W. 941).

However, a distinction is to be kept in mind in matters of this kind between an ordinance which leaves the enactment of law to individuals, and an ordinance prohibitory in character. The prohibition may be modified with the consent of the persons most affected by such modification; hence an ordinance is not invalid by reason of a provision that buildings may be erected or used for particular purposes if the consent of a part or all of the property owners in the vicinity is obtained. *Thomas Cusack Co. v. City of Chicago*, 242 U. S. 526 (61 L. Ed. 472); *People ex rel. Huntley Dairy Co. v. Village of Oak Park*, 268 Ill. 256 (109 N. E. 11); *Inspector of Buildings of Lowell v. Stoklosa*, 250 Mass. 52 (145 N. E. 262). But this latter rule only applies as to buildings the location of which a municipal corporation has the power to direct. *People ex rel. Huntley Dairy Co. v. Village of Oak Park*, supra.

As we have heretofore held that the city had no power to pass this prohibitive ordinance in the first instance, the question as to whether or not the 60 per cent provision thereof invalidates the ordinance is not controlling herein.

One other question remains: It is the claim of the city that it had in incubation a general plan for zoning the city and passing a general zoning ordinance under Code Chapter 324, and that, as an emergency measure, and as an aid thereto, it had the right to pass this amendatory ordinance known as O-119. This claim is bottomed on the case of *Miller v. Board of Public Works*, 195 Cal. 477 (234 Pac. 381). It is true that in that case an ordinance similar to the one before us was sustained as an emergency measure. The general rule in this state, as heretofore stated, is that all rights to exercise the police power

in the first instance rest in the state. It has the right to delegate such police power to municipalities, but, as stated, such delegations of power by the state to municipalities are strictly construed, and convey no powers except those expressed or necessarily implied to carry out the object of the grant; hence the municipal police power is derived wholly from the state. This is not true under the California law, as, under the Constitution of that state, the right to exercise the police power is granted in the Constitution to the municipality; and where the corporation derives its police power from the Constitution, it is as broad as that possessed by the legislature itself, except that it must be confined to local affairs. *Boyd v. City of Sierra Madre,* 41 Cal. App. 520 (183 Pac. 230); *City of Marion v. Criolo,* 278 Ill. 159 (115 N. E. 820); *City of New Orleans v. Charouleau,* 121 La. 890 (46 So. 911); *Attorney General v. City of Detroit,* 225 Mich. 631 (196 N. W. 391); *In re Application of Siracusa,* 125 Misc. Rep. 882 (212 N. Y. Supp. 400).

The municipality in California having acquired its powers directly from a constitutional grant, the emergency ordinance there passed was, of course, justifiable; but the doctrine laid down in that case can have no application to the matter under consideration in the case at bar. It follows, therefore, that the ruling of the district court in this matter was right.—*Affirmed.*

EVANS, FAVILLE, KINDIG, and GRIMM, JJ., concur.