# UNITED STATES EX REL. EARLY v. RICHARDS.

---

TAXES; LICENSES; AUTOMOBILES; STATUTES.

1. The act of Congress of July 1, 1902 (32 Stat. at L. 622, chap. 1352), which, among other annual license taxes imposed by it, imposes such a tax upon every public automobile garage, and which provides that the act shall not be so interpreted as to repeal municipal regulations regarding the establishment or conduct of the business taxed, did not preclude the municipal authorities from making sec. 160b, building regulations D. C., prohibiting the establishment of such a garage in any residential section without the written consent of a certain proportion of the owners of adjoining property; and such regulation is not unreasonable or oppressive (following *District of Columbia* v. *Lee*, ante, 341), and is not a delegation by the municipal authorities of a power vested in them by Congress (following *Barnes* v. *District of Columbia*, 24 App. D. C. 459, and *District of Columbia* v. *Lewis*, 26 App. D. C. 133, 6 A. & E. Ann. Cas. 1014).

2. While the legislature cannot lawfully delegate its power to make a law, it may confer authority or discretion as to the execution of a law it makes, upon those directly affected by its operation.

No. 2154.   Submitted October 6, 1910.   Decided November 1, 1910.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia overruling a demurrer to the answer to a petition for the writ of mandamus, and, the petitioner electing to stand upon his demurrer, dismissing the petition.                      *Affirmed.*

The COURT in the opinion stated the facts as follows:

In this case the appellant, Charles Early, petitioner below, is the owner of a lot in the city of Washington, fronting on a public alley 15 feet wide and not connected with the street. He made application to the inspector of buildings for a permit to construct on the lot a private garage, which permit was granted, and the building erected in accordance therewith. Upon the completion of the building, appellant converted it into a public garage, and subsequently an information was filed against him in the police court, charging him with operating a public garage without a license. The cause is still pending in the police court. Subsequent to the filing of the information, appellant made application to William P. Richards, the assessor of the District of Columbia for a license to operate a public garage in said building. This application was refused. Appellant then filed his petition for a writ of mandamus in the supreme court of the District of Columbia to compel the assessor, appellee herein, to issue the license. The appellee answered, and to this answer appellant demurred. The demurrer was overruled, and, appellant electing to stand upon his demurrer, judgment was entered dismissing the petition. From this judgment the case comes here on appeal.

*Mr. James B. Flynn* and *Mr. C. Albert White* for the appellant.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. Wm. Henry White,* Assistant, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We are confronted with the following assignments of error: "(1) In refusing to hold that sec. 160b of the building regulations is an attempt on the part of the Commissioners to amend paragraph 13 of sec. 7 of chap. 1352 of the act of Congress of 1902 (32 Stat. at L. 622), which provides for the granting

of licenses for establishments wherein are kept or stored auto-vehicles, for others for profit or gain. (2) In refusing to hold that section 160b of the building regulations is an attempted delegation by the commissioners of the power vested in them by Congress, and is without authority of law, and void." The other assignments relating to the overruling of the demurrer and the dismissal of the petition need not be considered.

Section 7 of the act of Congress of July 1, 1902, in the first paragraph provides that all applications for licenses shall be made to the assessor of the District of Columbia. Paragraph 13 provides as follows: "That proprietors or owners of establishments where auto-vehicles of any pattern, description, or motor power whatsoever are kept for hire, or are kept or stored for others, for profit or gain, shall pay a license tax of twenty-five dollars per annum for ten vehicles or less, and two dollars additional for each vehicle in addition to ten: Provided, That nothing in this paragraph shall be so construed as to exempt the owner of any vehicle using the public stands from paying the additional license tax provided in paragraph 11 of this section." Paragraph 48 provides "that nothing in this section shall be interpreted as repealing any of the police or building regulations of the District of Columbia regarding the establishment of conduct of the businesses, trades, professions, or callings herein named." A penalty is provided for the violation of the act, and the police court is given jurisdiction to punish such violations.

Section 160b of the building regulations provides: "No automobile or locomobile livery stable or building wherein automobiles or locomobiles are to be stored, put up, or kept for hire, or otherwise, shall be erected, located, established, or maintained upon any residence street or avenue in the District of Columbia without the written consent of the owners of 75 per centum of the property within 200 feet of the proposed establishment (excepting property used for purposes requiring consent of property owners) ; strictly private establishments of this character located not less than 50 feet back from the front building line of the lot will be exempted from this regulation. No public

automobile or locomobile livery stable, or building where automobiles or locomobiles are to be stored, put up, or kept for hire, or otherwise (excepting strictly private establishments), shall be erected, located, established, or maintained upon property fronting upon a public alley or upon a business street or avenue, where the rear of the property on which any such stable is to be erected, located, established, or maintained opens upon a street or alley, or upon property used wholly or partly for residential purposes, without the written consent of the owner or owners of two thirds of the property not occupied wholly or in part for business purposes within 90 feet of the outline of the building or part of the building to be erected or used therefor. The 90 feet herein mentioned shall not be construed as extending beyond the limit of the square in which said automobile or locomobile livery stable is proposed to be located."

The contention of appellant as set forth in the first assignment of error cannot be sustained. The act of July 1, 1902, imposes an annual license tax, for the purpose of raising revenue, on the keepers of public garages. It does not impose upon the assessor the duty of issuing a license to any person who may apply in compliance with the terms of the act. Its enforcement is made by its terms subject to the building and police regulations of the District of Columbia. Where its terms are in conflict with any reasonable and proper building or police regulation, the issuance of a license thereunder could not be enforced. We see nothing unreasonable nor oppressive in the police regulation here under consideration. It provides for the protection of residential sections of the city from the nuisance of a public garage. Such a regulation is not in conflict with the act of Congress imposing licenses for the purposes of revenue. In *District of Columbia* v. *Lee, ante,* 341, where the court was considering a regulation passed by the commissioners requiring the proprietor of a hand laundry to make written reports to the health officer, and it was contended that such provision was in conflict with the act of Congress here under consideration, the court said: "The requirement in said act that the proprietor of a hand laundry shall pay an annual license tax is for the

purposes of revenue. The object of the municipal regulation is the protection of the public health. There is no reason, therefore, why the regulation may not be sustained, unless it is so clearly unreasonable and oppressive as to be outside the police powers of the municipality. The license issued under said act does not authorize the holder to conduct a laundry, regardless of such reasonable police regulations as may be enacted for the protection of the people against the spread of contagious diseases, nor does it authorize the holder to maintain a nuisance. In other words, the right conferred by the license is a qualified, and not an absolute, right." So, in this case, the right conferred by the act of Congress upon an applicant to receive a license for the keeping of a public garage is not an absolute right. It may be withheld, subject to a reasonable and proper police regulation providing for the protection of the people in the residential sections of the city against the maintenance of a nuisance. The police regulation in this instance is not an attempt on the part of the commissioners to amend the act of Congress, but is a regulation supplementary to, and in conformity with, its provisions.

It is insisted that the provision of the building regulations under consideration is void in that the power vested in the commissioners by Congress has been delegated to the owners of property within a radius of 200 feet of the proposed building. This contention has no better standing than the one just considered. It will be observed that the regulation in no way interferes with the operation of the act of Congress. It does not place it within the power of the property owners to exclude public garages from the District. It simply divides the residential section from the business section of the city, and requires, as a condition precedent to securing a license in the residential section, that the consent of 75 per cent of the owners of property within a prescribed radius shall be secured before the license shall issue. In other words, the regulation absolutely forbids the erection of a public garage in certain parts of the residential portion of the District, and then provides a method by which the prohibition

may become inoperative. That the commissioners had power to limit the erection and maintenance of public garages to the business districts of the city is well settled. *Chicago* v. *Stratton,* 162 Ill. 494, 35 L.R.A. 84, 53 Am. St. Rep. 325, 44 N. E. 853; *Soon Hing* v. *Crowley,* 113 U. S. 703, 28 L. ed. 1145, 5 Sup. Ct. Rep. 730; *Welch* v. *Swasey,* 214 U. S. 91, 53 L. ed. 923, 29 Sup. Ct. Rep. 567.

But it is insisted that the whole question of whether or not a public garage may be located in the residential portion of the District has been delegated to the property owners in the immediate vicinity of the proposed building. This provision, we think, does not amount to a delegation of legislative power. The law is complete, and operates as an absolute prohibition against the maintenance of public garages in certain portions of the District; but its operation is made to depend upon the voice of the people in a given section. When the people declare that a public garage may be established in a given locality, the law has not been changed; neither has a law been enacted. They have simply exercised the right conferred by the law itself. They have determined for themselves a question which the law left open for their decision. Their action does not relate to the making of the law, but to its execution. It is competent for the legislature to provide that, as a condition precedent to the execution of a law, the people of a given district may decide whether it shall apply to that locality or not. Especially is this true of police regulations.

Police regulations depending for their enforcement or non-enforcement upon the will of the people directly affected are not uncommon, and have frequently been passed upon by the courts. In Pennsylvania a statute making the granting of liquor licenses dependent upon the vote of the people of the locality affected was assailed as an unconstitutional delegation of legislative power. The supreme court of that state, construing the statute in *Locke's Appeal,* 72 Pa. 491, 13 Am. Rep. 716, said: "When the law came from the halls of legislation it came a perfect law, mandatory in all its parts, pro-

hibiting in this ward the sale of intoxicating liquors without license, commanding an election to be held every third year to ascertain the expediency of issuing licenses, and, when the fact of expediency or inexpediency shall have been returned, commanding that licenses shall issue or shall not issue. Then what did the vote decide? Clearly, not that the act should be a law or not be, for the law already existed. Indeed, it was not delegated to the people to decide anything. They simply declared their views or wishes, and when they did so, it was the *fiat* of the law, not their vote, which commanded licenses to be issued or not to be issued. * * * So long, therefore, as the legislature only calls to its aid the means of ascertaining the utility or expediency of a measure, and does not delegate the power to make the law itself, it is acting within the sphere of its just powers. * * * Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

Construing a similar statute in *Fouts* v. *Hood River,* 46 Or. 492, 1 L.R.A.(N.S.) 483, 81 Pac. 370, 7 A. & E. Ann. Cas. 1160, the supreme court of Oregon said: "It is not the election that breaches into the act its validity or vitality. The act is complete, and an active, living force without it; but the election, as is designed, and which is constituted a part of the enginery of the law, does contribute to designate or determine the contingency upon which prohibition shall become operative or not, according to the popular will in the locality or localities where invoked."

While it is undoubtedly true that a law-making body cannot delegate its power to make a law, it is equally well settled that a law may confer authority or discretion as to its execution upon those directly affected by its operation. In the present case, the provision requiring the consent of the landowners relates solely to the execution of the regulation, and not to its enactment. The regulation does not delegate to the landowners the power to pass it or even approve it.

Their consent is a condition subsequent to its passage, which may defeat its operation in a particular locality within the forbidden district. Ordinances of this character in cities have been generally upheld. *Chicago* v. *Stratton, supra,* and cases cited; *Barbier* v. *Connolly,* 113 U. S. 27, 28 L. ed. 923, 5 Sup. Ct. Rep. 357; *Soon Hing* v. *Crowley, supra; United States ex rel. Strasburger* v. *District of Columbia,* 5 Mackey, 389; *Barnes* v. *District of Columbia,* 24 App. D. C. 459; *District of Columbia* v. *Lewis,* 26 App. D. C. 133, 6 A. & E. Ann. Cas. 1014.

Police regulations of this sort have been so generally upheld in this District that the law may be regarded as settled in this jurisdiction. If it were a debatable question, we would be slow to disturb a rule so firmly established. As said by Mr. Justice Hagner in *United States ex rel. Strasburger* v. *District of Columbia, supra:* "We consider it safer to rely upon the analogies to be deduced from our own laws than to wander into foreign jurisdictions, and be guided by decisions based upon Constitutions, statutes and ordinances to which we are strangers, and delivered in communities whose polity may be very different from ours. * * * It is evident that the present regulation of the commissioners is in the direction of this settled policy, and it is not to be forgotten that we are dealing here with a case where an application is made for an affirmative act to be done by the officers of a great city, who, it can scarcely be supposed, were intended by Congress to be reduced to mere automata, while the officers of every other municipality are endowed with such a measure of discretion in the premises as may enable them to protect their fellow citizens from such unreasonable demands, which may be made without regard for, and in opposition to the wishes and the good of the great majority." And Mr. Justice James in a concurring opinion in the same case said: "It may be added that, by requiring the consent of the neighbors, the commissioners have not turned over to those persons the exercise of any power in the premises. They have merely provided a means of ascertaining for themselves the propriety

of allowing such a building to be erected in the proposed place." In that case the petitioner had a license for a theater, which was burned. He was then given a permit to change a skating rink into a theater building. This permit the commissioners canceled, and passed a regulation requiring the consent of a majority of the residents in the square in which it was proposed to erect the building, and also in the confronting square, before such license should be granted. The petitioner failed to secure the consent of the requisite number of residents, and the permit to build and the license were refused. The action of the commissioners was upheld.

Police regulations of this character are established to promote the health, convenience, and peace of the community, and courts will go far in sustaining them, if reasonable and consistent with the public welfare.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*