STATE EX REL. CHARLES B. BEERY v. JAMES G. HOUGHTON.[1]

July 3, 1925.

No. 24,812.

**Zoning ordinance of Minneapolis valid.**
    The zoning ordinance of Minneapolis excluding a four-family flat building from a restricted residence district is constitutional.

See Municipal Corporations, 28 Cyc. p. 737 (Anno).

--------

See notes in 19 A. L. R. 1395; 33 A. L. R. 287.
See notes in 49 L. R. A. (N. S.) 438; L. R. A. 1917F, 1060.

Upon the relation of Charles B. Beery the district court for Hennepin county granted a writ of mandamus directed to the inspector of buildings of the city of Minneapolis, to compel him to issue a

[1]Reported in 204 N. W. 569.

permit for the erection of a certain building. The trial was before Nye, J., who ordered judgment in favor of respondent. From the judgment, plaintiff appealed. Affirmed.

*C. J. Eisler*, for appellant.

*Neil M. Cronin*, City Attorney, and *Thomas B. Kilbride*, Assistant City Attorney, for respondent.

DIBELL, J.

Mandamus to compel the defendant, inspector of buildings, to issue to the relator a permit for a four-family flat building in Minneapolis. There was judgment for the defendant and the plaintiff appeals.

By the comprehensive zoning ordinance of Minneapolis a district is created in which the erection of four-family flat buildings is prohibited. The relator's property is in that district. The ordinance was enacted under the authority of L. 1921, p. 267, c. 217, as amended by L. 1923, p. 521, c. 364. Whether the ordinance is constitutional is the question.

In State v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050, it was held by a divided court, that an ordinance of Minneapolis prohibiting the erection of a store within a residential district was not a legitimate exercise of the police power under G. S. 1913, §§ 1581-1585; G. S. 1923, §§ 1569-1574. In State v. Minneapolis, 136 Minn. 479, 162 N. W. 477, we held void an ordinance prohibiting the erection of a four-family flat building within a residential district of Minneapolis, following the former case. In Vorlander v. Hokenson, 145 Minn. 484, 175 N. W. 995, where it was sought to erect a three-story brick apartment building, the same holding was made, following the two earlier cases. In Meyers v. Houghton, 137 Minn. 481, 163 N. W. 754, the rule was applied to a building suitable for a small factory in a residential district. The case first cited was followed. In State v. Houghton, 142 Minn. 28, 170 N. W. 853, the exclusion of a cereal mill, disturbing a residential district through dust and unwholesome odors and noise, was sustained. These cases involved building in a duly-created residen-

tial district and the exclusion was sought to be sustained under the police power.

The case of State v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585, involved the condemnation of property against its use for an apartment building under the authority of L. 1915, p. 180, c. 128. It was first held, by a divided court, that there was no public use justifying the condemnation. A rehearing was had. Upon the rehearing it was held by a divided court that there was a public use, and the condemnation was sustained. The public use which sustains the taking of property under the power of eminent domain upon compensation paid differs from the public interest or welfare which justifies the restriction of the individual in the use of his property without compensation in consideration of the public interest and common welfare of the community. But it was probably felt by members of the court and the profession that the decision of the court was trenching upon its former utterances relative to restricted residential districts, and there was a basic conflict which ultimately would result in sustaining the creation of a residential district without compensation in the exercise of the police power. Indeed, an award of damages to obtain a restricted residential district is largely theoretical and, resulting in a possible encumbering of property with something akin to an easement, is practically objectionable. If restricted residential districts are to be established, there are substantial reasons why the result should be accomplished through the exercise of the police power. In the last prevailing opinion, which states the law as determined by the court, Mr. Justice Holt said:

"The right to restrict under the police power without compensation, and to restrict by condemnation with compensation, differ, but have much in common. It is likely that many of the businesses and buildings referred to in the statute could be excluded under the police power. * * *

"The tendency is in the direction of extending the power of restriction, either through the exercise of the police power or the exercise of the right of eminent domain, in aid of the so-called

city planning or the improvement of housing conditions. Our elaborate Housing Code of 1917 is an illustration of an effort on the part of the state, through the exercise of the police power, to so regulate the construction of buildings that living conditions shall be better.  *  *  *

"It must be admitted that owners of land in congested cities have of late, through selfish and unworthy motives, put it to such use that serious inconvenience and loss results to other landowners in the neighborhood. In large cities, where the lots for residences must necessarily be of the minimum size, especially where the man of small means must dwell, it is readily seen that if a home is built on such a lot and thereafter three-story apartments extending to the lot line are constructed on both sides of the home it becomes almost unlivable and its value utterly destroyed. Not only that, but the construction of such apartments or other like buildings in a territory of individual homes depreciates very much the values in the whole territory."

The exclusion of objectionable callings interfering with the comfort and welfare of the community is sustained without the creation of a residential district. In St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171, a statute excluding an undertaking establishment from a residence district, not a residential district established by law, was sustained. Various occupations are excluded, or restricted in use, by requiring a permit or license, or by an injunction at the suit of a private party who is injured. State v. Amor & Co. 153 Minn. 244, 190 N. W. 59 (undertaking); State v. Rosenstein, 148 Minn. 127, 181 N. W. 107 (lumber yard); State v. Dirnberger, 152 Minn. 44, 187 N. W. 972 (laundry); State v. Bjork, 157 Minn. 276, 195 N. W. 926 (marble manufacturing); and our line of recent cases involving the operation of a stone quarry. Brede v. Minn. Crushed Stone Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; Millett v. Minn. Crushed Stone Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682; Id. 146 Minn. 406, 178 N. W. 820, 179 N. W. 638; Meyers v. Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609.

Zoning statutes are becoming common. The police power, in its nature indefinable, and quickly responsive, in the interest of common welfare, to changing conditions, authorizes various restrictions upon the use of private property as social and economic changes come. A restriction, which years ago would have been intolerable, and would have been thought an unconstitutional restriction of the owner's use of his property, is accepted now without a thought that it invades a private right. As social relations become more complex restrictions on individual rights become more common. With the crowding of population in the cities there is an active insistence upon the establishment of residential districts from which annoying occupations and buildings undesirable to the community are excluded. In the last dissenting opinion in State v. Houghton, 144 Minn. 1, 21-24, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585, the suggestion was made that the power to exclude from districts selected as exclusive was unfortunate as tending to accentuate class distinctions. Without minimizing its force, it is well to note that the police power which permits the creation of exclusive residence districts may enforce, when invoked, better housing conditions in localities where they are unwholesome; and those living in undesirable down town or semi-business districts may be protected in their living conditions by police regulations, burdening the business property, perhaps owned by those living in restricted residence districts. The small home owner, or the one who rents, may be bettered in his living conditions. The advantage is not altogether to one class.

The trend of the authorities is in the way of sustaining legislative regulations. Welch v. Swasey, 214 U. S. 91, 29 Sup. Ct. 567, 53 L. ed. 923 (statute limiting the height of buildings); Hadacheck v. Los Angeles, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. ed. 348, Ann. Cas. 1917B, 927 (ordinance prohibiting manufacture of bricks within a section of city); Reinman v. Little Rock, 237 U. S. 171, 35 Sup. Ct. 511, 59 L. ed. 900 (ordinance prohibiting livery stable within certain parts of city); Cusack Co. v. Chicago, 242 U. S. 526, 37 Sup. Ct. 190, 61 L. ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C,

594, affirming 267 Ill. 344 (ordinance prohibiting the erection of bill-boards in residential districts.)

Zoning ordinances, fair in their requirements, are generally sustained. Opinion of Justices, 234 Mass. 597, 145 N. E. 262; Inspector of Buildings v. Stoklosa, 250 Mass. 52, 145 N. E. 262; Spector v. Building Inspector, 250 Mass. 63, 145 N. E. 265; Brett v. Building Commissioner, 250 Mass. 73, 145 N. E. 269; State v. Harper, 182 Wis. 148, 196 N. W. 451, 33 A. L. R. 269; Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852; Des Moines v. Manhattan Oil Co. 193 Iowa, 1096, 184 N. W. 823, 188 N. W. 921, 23 L. R. A. 1322; Ware v. Wichita, 113 Kan. 153, 214 Pac. 99; Miller v. Board (Cal.) 234 Pac. 381; Zahn v. Board (Cal.) 234 Pac. 388; Ex parte White (Cal.) 234 Pac. 396; State v. New Orleans, 154 La. 271, 97 South. 440, 33 L. R. A. 260; New Orleans v. Liberty Shop, 157 La. 26, 101 South. 798; Salt Lake City v. Western F. & S. R. W. 55 Utah, 447, 187 Pac. 829; Lincoln Trust Co. v. Williams Building Corp. 229 N. Y. 313, 128 N. E. 209.

Finally, the exercise of the police power is legislative. Its policy is not for the courts. Only when its exercise unconstitutionally affects personal or property rights do the courts take cognizance; and it is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate. Central Lumber Co. v. South Dakota, 226 U. S. 157, 33 Sup. Ct. 66, 57 L. ed. 164; Otis v. Parker, 187 U. S. 606, 23 Sup. Ct. 168, 47 L. ed. 323; Patsone v. Pennsylvania, 232 U. S. 138, 34 Sup. Ct. 281, 58 L. ed. 539; State v. Fairmount Creamery Co. 162 Minn. 146, 202 N. W. 714.

We hold that a fair zoning ordinance resulting in the exclusion of a four-family flat building from a designated residential district is constitutional. This holding is not in harmony with our earlier decisions. It is directly opposed to the result reached in State v. Minneapolis, 136 Minn. 479, 162 N. W. 477. But, as before stated, the last prevailing opinion in State v. Houghton, 144 Minn. 1, 13, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585, which established the law and nullified opposing individual opinions, was fundamental-

ly opposed to some of the views made the basis of the denial of the right of exclusion under the police power in the earlier cases, though none of them were in terms overruled, and perhaps should not have been. So far as in conflict with the view now adopted they are not to be followed.

Judgment affirmed.