## AMERICAN WOOD PRODUCTS CO. v. CITY OF MINNEAPOLIS et al., and three other cases.

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

Nos. 8143–8146.

George T. Simpson, of Minneapolis, Minn., for appellants.

R. S. Wiggin, of Minneapolis, Minn. (Neil M. Cronin, of Minneapolis, Minn., on the brief), for appellees.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and MARTI-NEAU, District Judge.

KENYON, Circuit Judge. The appeals in four separate cases in which the zoning ordinance of the city of Minneapolis is attacked are here consolidated and argued as one cause. Plaintiffs in the trial court (appellants here) asked that the zoning ordinance of the city of Minneapolis be declared for various reasons to be invalid; that defendant Houghton, as building inspector of said city, be directed to issue to said plaintiffs permits for certain factory buildings they desired to erect upon their properties zoned as "multiple dwelling" areas under the zoning ordinance, or additions to those already there.

The trial court [21 F.(2d) 440, 443] was familiar with the situation of the property involved, and in its opinion described it in a general way as follows:

"The general situation of this property is a peculiar one. Slightly to the east lies the city limits of the city of St. Paul, and the use of property slightly to the east and in St. Paul is a heavy industrial use, and it is part of what is known as the Midway District. To the north, University avenue is an industrial street, and north of that and east of the spur, the territory is given up largely to industry. To the west of this property and between the spur and the Mississippi river, the property is mainly residential in character, and it is but a short distance from the River boulevard, which is devoted principally to hand-some single residences. Between the spur and the city limits of the city of St. Paul, in the district where the complainants' properties are situated, the territory is also largely residential, and there has been no considerable development of industry.

"The University of Minnesota is located in the city of Minneapolis on the east side of the Mississippi river, within a short distance of the district in which the complainants' properties lie. Within recent years there has been a tremendous growth of that institution, and the housing problem for the faculty and students has increased. Much of the property which formerly was used for dwelling houses near the University has been taken over by the state, the dwelling houses removed, and University buildings built. It is, of course, necessary that there should be a district surrounding the University for the housing of those who are connected with it, and the problem is one which the city of Minneapolis has to meet."

The spur referred to is a switching track of the Chicago, Milwaukee & St. Paul Railway Company, which was constructed some 45 years ago near the east bank of the Mississippi river, connecting what is known as the Milwaukee Short Line with the line of the Great Northern to the north, and is used for switching purposes, a large number of movements passing over the same each day. The American Wood Products Company is located on the easterly side of the spur and has there a wood-working factory for the manufacture of cedar chests and other wooden products. Its business has so increased that it desires to enlarge its factory, and seeks a permit therefor. Complainant Benson owns vacant and unoccupied property along the spur track, and desires to erect a factory building thereon. Complainant's [the Northwestern Feed Company.] property is north of the Benson property. It has a warehouse thereon for storage of feed and grain, and proposes to add thereto.

The property of the Lyle Culvert & Road Equipment Company does not touch the spur track, but is near it, and a switch owned by complainant connects it with the spur. The property is vacant and unimproved. It intends to put thereon an industrial establishment, with boiler room, repair shop, and garage. It is engaged in the manufacture of road machinery, culverts, etc.

The building inspector refused all applications for permits to build factories upon these properties or additions to those already there, because of the zoning ordinance which had been adopted by the city council of Min-

neapolis on the 3d of October, 1924, which embodies a comprehensive plan covering the entire city, but too extended to be set out here. The Milwaukee Railway spur is intended to be substantially the north and south dividing line. To the east thereof, with some slight exceptions, is the "multiple dwelling" area, and to the west is "light industrial" area. The property of these various complainants is embraced in the "multiple dwelling" area.

The trial court dismissed the bills of complaint and filed an opinion, the main conclusion of which is as follows: "In spite of the fact that I think that the city has dealt unjustly with these complainants, and particularly the American Wood Products Company and the Northwestern Feed Company, who had improved their property long prior to the going into effect of this ordinance, and who had no doubt helped to build up the section of the city in question, I cannot say that it is 'plain and palpable' that the restrictions placed upon the use of their property by the city 'has no real or substantial relation to the public health, safety, morals, or to the general welfare,' or that 'the validity of the legislative classification for zoning purposes' is not 'fairly debatable.' "

In 1921 the Legislature of Minnesota passed a law, which was applicable to Minneapolis, authorizing cities having 50,000 inhabitants or over to regulate the location, size, and use of buildings therein, and authorizing them to adopt a comprehensive plan for the development and improvement of the city or any portion thereof, and that future changes should be made in the plans only upon a majority vote of the members of the governing body of such city. In 1923 the Legislature passed an amendatory act (chapter 364 of the Laws of that year) amending said chapter 217 of the Laws for 1921, making section 1 thereof read as follows: "That for the purpose of promoting the public health safety, order, convenience, prosperity and general welfare, any city in the State of Minnesota now or hereafter having 50,000 inhabitants or over, acting by and through the governing body of said city, may by ordinance regulate the location, size and use of buildings, the height of buildings, the arrangement of buildings on lots, and the density of population therein, may make different regulations for different districts thereof, and may acquire or prepare and adopt a comprehensive city plan for such city or any portion thereof for the future physical development and improvement of the city, in accordance with the regulations made as

aforesaid, and may thereafter alter said regulations or plan, such alterations, however, to be made only after two-thirds of the property owners within the 100 feet of the real estate affected acquiesced therein and after the affirmative vote in favor thereof of two-thirds of the members of the governing body of such city."

The principal change sought to be made was to provide that property owners should have some voice in the matter of changing any plan for improvement, and that two-thirds of the governing body, instead of a majority, must vote therefor.

Appellant contends: First, that the act under which the ordinance was passed (chapter 364, Laws of 1923) is void as a delegation of legislative power, because of the provision therein that alterations in the regular, adopted plan for the development and improvement of the city can be made only after two-thirds of the property owners within the 100 feet of the real estate affected acquiesce therein, and after the affirmative vote in favor thereof of two-thirds of the members of the governing body of the city. And, secondly, that if there is authority to pass the zoning ordinance the same has no valid relationship to the police power of the state, and is so unreasonable and arbitrary that it violates the Federal Constitution in denying to complainants the equal protection of the laws and in the taking of their property for public use without compensation and without due process of law.

Appellees' position as to the first proposition is that the acquiescence of property owners is a mere jurisdictional prerequisite and that it is in effect equivalent to a petition for alteration of the plan.

The trial court held that if the amendment of 1923 was invalid there was ample power under chapter 217, Laws of 1921, to pass the zoning ordinance.

Appellants contend that under section 10,929 of the General Statutes of Minnesota for the year 1923, which covers the subject of when revision of a statute will operate as a repeal, the amendatory act of 1923 repealed section 1 of chapter 217 of the Laws of 1921, and that if chapter 364, Laws of 1923, is invalid there was no authority whatever in the city council of the city of Minneapolis to pass the zoning ordinance, and the same is void.

█ We see no need of passing on the question of whether the amendment of 1923 was valid. If it was an invalid enactment it would not operate to repeal section 1 of chapter 217, Laws of 1921, and under that section

ample power existed to pass the zoning ordinance. It may be noted in passing that this very ordinance has been held valid by the Supreme Court of Minnesota in Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, which decision was affirmed by the Supreme Court of the United States. 273 U. S. 672, 47 S. Ct. 474, 71 L. Ed. 832. It should be said that the decision related only to the general constitutionality of the ordinance, and that it had no reference to its effect as to particular properties. The Supreme Court of Minnesota, however, said in its opinion, "The ordinance was enacted under the authority of Laws 1921, c. 217, as amended by Laws 1923, c. 364," indicating that the court considered the amendment as valid.

We turn to the other and controlling question here, namely: Was the zoning ordinance such an unreasonable and arbitrary exercise of the police power that it deprived appellants of their property without due process of law, and denied to them the equal protection of the law? There is little remaining to be said as to the law, in view of the numerous decisions of the Supreme Court dealing with every phase of the question. The law is clear—its applicability to various circumstances and to situations brought about by the complexity of our civilization is ofttimes difficult. The general tendency of the courts is to uphold reasonable zoning ordinances that have a substantial relationship to the protection of public safety, health, morals, or general welfare. They are a matter of comparatively recent growth, made necessary by the tremendous industrial and business development of the country. The people of cities are entitled to some protection for their homes against the continual aggressions of business and from the conglomeration of nerve-destroying noises incidental to industrial development; hence residential districts are established where people may have a reasonably quiet home life. The governing bodies clothed with authority to determine residential and industrial districts in cities are better qualified because of their knowledge of the situation to act upon these matters than are the courts, and they should not be interfered with in the exercise of their police power to accomplish the desired end, unless under the guise of police power there is a plain violation of the constitutional rights of citizens. The leading case on the subject is Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365, 395, 47 S. Ct. 114, 121, 71 L. Ed. 303, 54 A. L. R. 1016. Here Justice Sutherland reviews the various phases and complications arising by virtue of zoning ordinances, and with great clearness and lucidity of reasoning lays down the legal rules to be applied, among which is the following of importance here: "If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." The zoning ordinance of the village of Euclid was at issue. It was held in its general scope and dominant features to be a valid exercise of the village's authority. The court pointed out that it was sustaining the ordinance in its general scope, and that whether the provisions of an ordinance when applied to a particular situation were unreasonable or arbitrary was not and could not be determined until that situation arose. That case settles the constitutionality of an ordinance such as is here involved as to its general scope and purpose, but leaves open the question as to whether under the specific facts presented it was so unreasonable, arbitrary, and discriminatory as to any of the properties involved as to violate constitutional inhibitions.

In Nectow v. City of Cambridge et al., 277 U. S. 183, 187, 48 S. Ct. 447, 448, 72 L. Ed. 842, the court considered a zoning ordinance of the city of Cambridge. It was the claim of the plaintiff in error that the placing of his property within a specified area where he could not use it as he desired deprived him of his property without due process of law, in contravention of the Fourteenth Amendment. The master found "that the districting of the plaintiff's land in a residence district would not promote the health, safety, convenience, and general welfare of the inhabitants of that part of the defendant city, taking into account the natural development thereof and the character of the district and the resulting benefit to accrue to the whole city." The court points out that the inclusion of the locus in question was not indispensable to the general plan, and that it could have been excluded from the residence district by a rather immaterial change in the line, and that there appeared to be no reason why that should not have been done, but held that this would not warrant the court in substituting its judgment for that of the zoning authorities. The court, however, held, in view of the finding of the master above set forth, that the action of the zoning authorities came

within the ban of the Fourteenth Amendment.

In the present case there was no such finding. The trial court asserted in its opinion that the public convenience of the people living in that section of the city where these properties lie authorized the zoning of the property as "multiple dwelling," although it pointed out that the ordinance seriously affected the value of the property and was an unjust and unfair way for the city to limit its use.

In State of Washington ex rel. Seattle Title Trust Co., as Trustee, etc., v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. ——, the Supreme Court discussed a zoning ordinance of the city of Seattle. The plaintiff in error sought to remove an old building and construct in its place an attractive home for the aged poor sufficient to accommodate some 30 persons. Under the zoning ordinance such building could not be erected at that place. It was held that in its general scope the ordinance was valid under the authority of Euclid v. Ambler Realty Co., supra. The Supreme Court held that there was nothing in the construction of this building or its use that would work any injury, inconvenience, or annoyance to the community, and distinguished the situation from those where the uses of properties were likely to be offensive. The court held the attempted delegation of power under the ordinance could not be sustained, and that the restriction as to securing consent of property owners was arbitrary and repugnant to the due process clause, and that the trustee was entitled to have the permit applied for issued.

So the real question here, in view of these decisions, is whether the restriction imposed by the zoning ordinance as applied to the particular situation of each separate piece of property involved in the different causes bears any substantial relation "to the public health, the public morals, the public safety or the public welfare in its proper sense."

The trial court was of the opinion that the value of the property of the various complainants for industrial purposes is from five to eight times as much as it would be for dwelling purposes, because the tracks of the Milwaukee Railway Company, while an advantage to industry, are a detriment to residences, and affect materially the value of such property for residence purposes.

The argument for appellants runs as follows: That some of the complainants had erected buildings on the properties, relying on an ordinance which did not prevent their operating the properties as "light industrial"; that their properties are greatly diminished in value by the operation of the zoning ordinance; that while these properties are zoned as "multiple dwelling," some of the property on the same side of the spur track and similar property on the other side are zoned as "light industrial"; that just across the spur track, and coming under the designation of "light industrial," is the property of the W. H. Barber Company, whose business is buying and selling oils and glues which are stored on the premises; that the property on one side of the railroad is as good as that on the other for use for industrial purposes; that to make desirable residence lots of property near the property in question would require removal of the spur track; that the planning commission of the city of Minneapolis originally recommended to the city council that the property of complainants be zoned as "light industrial"; and that such course would have been followed had it not been for the action of the Board of Regents of the State University of Minnesota insisting that this property would be needed for the residential needs of the university in the future.

The other side of the argument is that the residential district adjacent to these properties will be affected by the noises, dirt, and confusion that arise from the operation of the American Wood Products plant, and the handling of grains by the Northwestern Feed Company; that the Lyle Culvert & Road Equipment Company contemplate the operation of machine shops with the attendant noises produced by riveting, motors, hammering, and other irritants calculated to fray the nerves of the residents of the community.

The city council refused to adopt the plan of the planning commission, and it appears from the record that the planning commission changed its mind on the subject. Members of the Board of Regents are not subject to criticism because they were looking forward to the future of the university, which was located near this property. The development of a great university is intricately connected with the general welfare of a state. The evidence shows that in their judgment the property would be needed for residential purposes in connection with the growth of the university, it having in 1925 over 10,000 students, and a faculty of over 1,100 members, the greater percentage of whom desired to live in the vicinity of the university. It is part of the plan of the regents that the spur track be removed at some time in the future.

Of course the line of demarcation between property to be used for industrial purposes and residence purposes is necessarily in any case somewhat arbitrary, but can it be

said that merely because the property on one side of the railroad may be as good for industrial purposes as that on the other side that failure to draw the line so as to include all the property appropriate for industrial purposes within one area is such an arbitrary action as to render the same violative of the Constitution? The trial court said: "Because of their very nature, there have got to be lines drawn which are more or less arbitrary. Who, for instance, can tell with any degree of certainty where a 'single dwelling' district should end and a 'multiple dwelling' district begin, or what the limits of a 'light industrial' district should be or the limits of a 'heavy industrial' district?" That the value of these properties is diminished by the ordinance is not sufficient to invalidate it. Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927. Can a court say that there is absolutely no reasonable basis for a zoning ordinance designating the properties of appellants as "multiple dwelling," and that therefore the ordinance is so arbitrary and unreasonable as to them as to deprive them of the equal protection of the laws and to amount to the taking of their property in violation of the Fourteenth Amendment to the Constitution? It would seem fairly to be a debatable proposition. Therefore it seems to us that in the condition of this record the judgment of the trial court must be affirmed, for certainly the burden was on complainants to show that this ordinance rests on no reasonable basis. We do not see that they have offered any substantial evidence on this subject. They did not show that what they propose to do will not seriously affect the health, safety, and general welfare of the people occupying surrounding property within the district, and that burden was upon them, as certainly there must be some presumption that the action of the city council in passing the ordinance was in the general public interest and for the promotion of the public welfare. This court said in Marrs et al. v. City of Oxford et al., 32 F. (2d) 134, 139, in discussing the subject of police power of municipalities (opinion filed March 25, 1929): "Necessarily these regulations will encroach, when the power is exercised, on private rights; but that does not render them void. The power has its limitations and when submitted for judicial review it must appear that its exercise appropriately affords protection to the public against threatened evils. Arbitrary and unreasonable regulations, clearly ineffective in accomplishment of the claimed public interest, will be stayed; but the presumption is in favor of a law or ordinance passed in the exercise of the power, until the contrary is shown."

In Cusack v. Chicago, 242 U. S. 526, 530, 531, 37 S. Ct. 190, 192, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, the court said: "While this court has refrained from any attempt to define with precision the limits of the police power, yet its disposition is to favor the validity of laws relating to matters completely within the territory of the state enacting them, and it so reluctantly disagrees with the local legislative authority, primarily the judge of the public welfare, especially when its action is approved by the highest court of the state whose people are directly concerned, that it will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare."

In State ex rel. Banner Grain Co. v. Houghton, 142 Minn. 28, 170 N. W. 853, 854, the Supreme Court said: "The area having been legally established as a residential district, and the relator thereafter claiming the right to erect and operate a factory therein, the burden is upon him to show that the proposed industry would not impair the value of the property within the district or seriously interfere with its proper enjoyment as residential property."

In Nectow v. City of Cambridge, 277 U. S. 183, 187, 48 S. Ct. 447, 448, 72 L. Ed. 842, the court said: "We quite agree with the opinion expressed below that a court should not set aside the determination of public officers in such a matter unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' Euclid v. Ambler Co., supra [272 U. S.] p. 395" (47 S. Ct. 121) [71 L. Ed. 303, 54 A. L. R. 1016].

In Zahn et al. v. Board of Public Works et al., 274 U. S. 325, 328, 47 S. Ct. 594, 595, 71 L. Ed. 1074, the court said: "The common council of the city, upon these and other facts, concluded that the public welfare would be promoted by constituting the area, including the property of plaintiffs in error, a zone 'B' district, and it is impossible for us to say that their conclusion in that respect was clearly arbitrary and unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

In Gorieb v. Fox et al., 274 U. S. 603, 608, 47 S. Ct. 675, 677, 71 L. Ed. 1228, 53 A. L. R. 1210, the court said: "State Legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character, and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts, unless clearly arbitrary and unreasonable."

The doctrine of these cases meets the situation here. Evidently the trial court would have been better satisfied if the line of demarcation between "light industrial" property and "multiple dwelling" property had been drawn so as to exclude the property of the American Wood Products Company and the Northwestern Feed Company. There is an element of unfairness in the situation as to the properties of these companies. We are not, however, prepared to differ with the trial court in its conclusion. We are not satisfied that our judgment would be any better than that of the zoning authorities, nor are we convinced that the zoning ordinance has no substantial relation to the public health, safety, morals, or general welfare of the district in question. While the federal courts should not permit destruction of private property under the pretense of police power, and should not hesitate to condemn the erratic exercise thereof, resulting in depriving parties of constitutional rights, they should be equally careful not to interfere with that reserved power of the states properly exercised for the general welfare. The trial court held that it was not plain or palpable that the restrictions placed upon the uses of these properties by the city had no real or substantial relation to the public health, safety, morals, or general welfare; that the subject was fairly debatable; and that consequently the ordinance should be sustained. We think its decision correct.

Affirmed.