## LEIGHTON v. CITY OF MINNEAPOLIS, MINN.

District Court, D. Minnesota, Fourth Division.

Aug. 17, 1936.

Robert Cowling, of Minneapolis, Minn., for plaintiff.

John F. Bonner, Asst. City Atty., of Minneapolis, Minn., for defendant.

BELL, District Judge.

This is an action in equity. The purpose, in effect, is to test the constitutionality of a provision of section 1614, Mason's Minn.St.1927. The statute is quoted in full with the provision involved in italics:

"Height of buildings in cities regulated —That for the purpose of promoting the

public health, safety, order, convenience, prosperity and general welfare, any city in the State of Minnesota now or hereafter having 50,000 inhabitants or over, acting by and through the governing body of such city, may by ordinance regulate the location, size and use of buildings, the height of buildings, the arrangement of buildings on lots, and the density of population therein, may make different regulations for different districts thereof, and may acquire or prepare and adopt a comprehensive city plan for such city or any portion thereof for the future physical development and improvement of the city, in accordance with the regulations made as aforesaid, and may thereafter alter said regulations or plan, *such alterations, however, to be made only after there shall be filed in the office of the City Clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected,* and after the affirmative vote in favor thereof a majority of the members of the governing body of such city; provided, however, that notwithstanding any resolution, ordinance or law conflicting herewith, the governing body of any such city, by an affirmative two-thirds vote in favor thereof, may by resolution grant a permit for the construction of additions, extensions or improvements to any hospital which is being actually operated and maintained on the premises which it occupies on the date of the passage of this act. ('21, c. 217, § 1; amended '23, c. 364, § 1; '25, c. 284, § 1.)"

That portion of the statute not italicized was enacted in 1921. The portion in italics, hereafter called the "consent clause," was added in 1923. The city council of Minneapolis in 1924 passed a comprehensive zoning ordinance covering the entire city and prescribing the size, location, and use of buildings in various designated areas.

The plaintiff is the owner of a lot at the corner of Upton Avenue South and Forty-Fourth Street in the city of Minneapolis on which is located a residence. Traffic is extensive on both of the streets named, and vehicles on approaching the intersection from any direction are required to stop. The intersection is at the edge of a commercial district, the area to the north being commercial and to the south residential. Two of the corners at the intersection are occupied by filling stations, and the other by a church.

Plaintiff's lot is zoned as "multiple dwelling," and she seeks to have it rezoned as "commercial," so that she may build thereon a building for commercial uses.

The plaintiff applied to the building inspector for a permit to construct the proposed building, but it was refused on the ground that the property was not zoned to authorize the construction of a building for commercial uses; whereupon the plaintiff presented an application to the city council to rezone her property, but the council refused, for the reason that there was not filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situated within 100 feet of the plaintiff's lot as required by the ordinance. The plaintiff was unable to secure the consent of the required number of owners.

It was agreed that the property now has a value of $3,500. The value, if it were reclassified for commercial purposes, is in dispute. There is substantial evidence to justify a finding that it would have a value for commercial uses of at least twice its present value. The amount involved is sufficient to meet the jurisdictional requirements.

The plaintiff contends that the consent clause infringes the Constitutions of the United States and of the state of Minnesota because it permits the taking of property without due process of law and is an unlawful delegation of legislative power.

The statute involved has been reviewed by the courts. State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N.W. 569, 54 A.L.R. 1012, affirmed Berry v. Houghton, 273 U.S. 671, 47 S.Ct. 474, 71 L.Ed. 832; American Wood Products Company v. City of Minneapolis et al. (D.C.) 21 F.(2d) 440, affirmed (C.C.A.) 35 F.(2d) 657.

The Supreme Court of Minnesota in the Beery Case, supra, in an opinion filed July 19, 1925, referred to the ordinance as having been enacted under the laws of Minnesota in 1921, as amended by the provision of 1923. The ordinance was held constitutional, but the opinion does not show that the precise question here raised was presented and considered.

In the American Wood Products Case, supra, it was contended that the statute was void on the grounds that it deprived complainants of their property without due process of law, of the equal protection of

the laws, and that it constituted a taking of private property for public purposes without just compensation, contrary to the Constitution of the United States and of the state of Minnesota (Const.U.S. Amend. 14; Const.Minn. art. 1, §§ 7, 13). The complainants further contended that the consent clause was void because it gave property owners a voice in making alterations in the zoning plan which is an unauthorized delegation of legislative power. The court held that it was unnecessary to decide the question of the validity of the consent clause; because, if it were invalid, there would be left the original statute which is constitutional and which contains ample authority for the ordinance in question. This case was affirmed on appeal, but the Circuit Court of Appeals [35 F.(2d) 657, 660] likewise held that it was unnecessary to determine the validity of the consent clause. However, the court said: "It may be noted in passing that this very ordinance has been held valid by the Supreme Court of Minnesota in [State ex rel.] Beery v. Houghton, 164 Minn. 146, 204 N.W. 569, 54 A.L.R. 1012, which decision was affirmed by the Supreme Court of the United States. [Berry v. Houghton] 273 U.S. 671, 47 S.Ct. 474, 71 L.Ed. 832. It should be said that the decision related only to the general constitutionality of the ordinance, and that it had no reference to its effect as to particular properties. The Supreme Court of Minnesota, however, said in its opinion, 'The ordinance was enacted under the authority of Laws 1921, c. 217, as amended by Laws 1923, c. 364,' indicating that the court considered the amendment as valid."

■ It is settled that under the police power residential districts in cities may be created and maintained and buildings for commercial purposes excluded by appropriate zoning legislation. Euclid v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. There was a time when the country was so sparsely settled that one man was not concerned about the location of the dwelling or workshop of another, and the rules of the common law governing the ownership of property and pertaining to nuisance were sufficient for the time; but in the modern city, where thousands of people live, engage in work and business in close proximity to each other, forming congested centers of population, such provisions of the common law have been found inadequate. Consequently, the police power has been used and extended to meet the exigencies of present-day conditions and to supplement the common law where it is deficient. Restrictions on the use of property have become common. Cities are zoned or divided into districts and the law prescribes the size, location, and use of buildings in the various zones. This regulatory legislation occasionally may result in injury and economic loss to individuals, but the police power transcends private rights to the extent required by public necessity; and, where the Legislature has acted within the scope of the police power, the courts will not substitute their judgment as to the propriety of the action taken, for that of the legislative body. Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074; Marblehead Land Company v. Los Angeles (C.C.A.) 47 F.(2d) 528; Women's Kansas City St. Andrew Society v. Kansas City (C.C.A.) 58 F.(2d) 593. In matters having a real or substantial relation to the public health, safety, morals, or to the general welfare, the courts will interfere only when it is plain and palpable that the action of the Legislature is arbitrary and unreasonable. Cusack Co. v. City of Chicago, 242 U.S. 526, 37 S.Ct. 190, 191, 61 L.Ed. 472, L.R.A.1918A, 136 Ann.Cas.1917C, 594; Euclid v. Ambler Realty Company, supra.

A provision in a zoning law, enacted under the police power, authorizing consent to modifications, or waiver of restrictions by property owners, is not an unconstitutional delegation of legislative power. Cusack Co. v. Chicago, supra; Building Inspector of Lowell v. Stoklosa, 250 Mass. 52, 145 N.E. 262; Spokane v. Camp, 50 Wash. 554, 97 P. 770, 126 Am.St.Rep. 913; Chicago v. Stratton, 162 Ill. 494, 44 N.E. 853, 35 L.R.A. 84, 53 Am.St.Rep. 325; Myers v. Fortunato, 12 Del.Ch. 374, 110 A. 847; U. S. ex rel. Early v. Richards, 35 App.D.C. 540; People v. Ericsson, 263 Ill. 368, 105 N.E. 315, L.R.A.1915D, 607, Ann. Cas.1915C, 186.

In the Cusack Case, supra, the court had under consideration an ordinance prohibiting the erection of a billboard on a public street where one-half of the buildings on both sides of the street were used exclusively for residence purposes without first obtaining the consent in writing of a majority of the owners. The court said: "The claim is palpably frivolous that the validity of the ordinance is impaired by the provision that such billboards may be erected in such districts as are described if the consent in writing is obtained of the own-

ers of a majority of the frontage on both sides of the street in any block in which such billboard is to be erected. The plaintiff in error cannot be injured, but obviously may be benefited, by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property. Tyler v. Judges of Registration, 179 U.S. 405, 21 S.Ct. 206, 45 L.Ed. 252; Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713. To this we may add that such a reference to a neighborhood of the propriety of having carried on within it trades or occupations which are properly the subject of regulation in the exercise of the police power is not uncommon in laws which have been sustained against every possible claim of unconstitutionality."

In Myers v. Fortunato, supra, an ordinance prohibiting the erection of a public garage in a residential district within 40 feet of the building line of adjoining property owners, unless their written consent was filed with the building inspector, was held constitutional and not a delegation of legislative power. The court said:

"The law is complete in itself wholly independent of what any one may do or say, but if those whom the law was designed to protect consent that the thing prohibited may be done in a particular case, the prohibition is modified to that extent. The validity of the law does not depend on the acts of such persons, and is entirely unlike those ordinances that are not effective until the property owners act, as in the building line case, and whose acts alone give to the ordinance the force and effect of law.

"If the existence of the law depends upon the vote or act of the people it is an unconstitutional delegation of legislative power, but if the law is complete in and of itself the fact that it provides for the removal or modification of its prohibition by the act of those most affected thereby, does not make it a delegation of legislative power. Such is the test recognized by the courts in many well considered cases, and by the Chancellor and law judges of this state in a recent opinion given to the Governor in respect to the constitutionality of the 'School Code.'"

In United States ex rel. Early v. Richards, supra, an act of Congress which prohibits the construction of a public garage on any street without the consent of a specified number of the property owners was held constitutional and not a delegation of legislative power. The court said:

"This provision, we think, does not amount to a delegation of legislative power. The law is complete, and operates as an absolute prohibition against the maintenance of public garages in certain portions of the District; but its operation is made to depend upon the voice of the people in a given section. When the people declare that a public garage may be established in a given locality, the law has not been changed; neither has a law been enacted. They have simply exercised the right conferred by the law itself. They have determined for themselves a question which the law left open for their decision. Their action does not relate to the making of the law, but to its execution. It is competent for the legislature to provide that, as a condition precedent to the execution of a law, the people of a given district may decide whether it shall apply to that locality or not. Especially is this true of police regulations.

"Police regulations depending for their enforcement or non-enforcement upon the will of the people directly affected are not uncommon, and have frequently been passed upon by the courts."

In the case of State of Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 52, 73 L. Ed. 210, 86 A.L.R. 654, relied on by the plaintiff, where a permit to build a home for aged people had been denied because the consent of the owners of two-thirds of the property within 400 feet was not filed with the application as required by ordinance, the court held that the provision requiring the consent of property owners was an unnecessary and unreasonable restriction on the use of private property and repugnant to the due process clause of the Fourteenth Amendment. However, the court stated that there was nothing in the record to show that the construction and maintenance of the home was liable to work any injury, inconvenience, or annoyance to any one; that there was no legislative determination that the home would be inconsistent with public health, safety, morals or the general welfare; that, to the contrary, the ordinance expressly provided

that the home would be permitted with the consent of the lot owners; and that the exclusion of the home was not indispensable to the general zoning plan of the city. In effect, the court held that the particular facts in that case did not present a situation showing that the proposed use of the property had any real or substantial relation to the public health, safety, morals, or general welfare. The facts presented a very different situation from those in the case under consideration. However, in the Roberge Case the court said:

"The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment. * * *

"As the attempted delegation of power cannot be sustained, and the restriction thereby sought to be put upon the permission is arbitrary and repugnant to the due process clause, it is the duty of the superintendent to issue, and the trustee is entitled to have, the permit applied for."

This language must be considered in connection with the facts in the case, the context of the opinion as a whole, and the opinion in the Cusack Case. In the Cusack Case, where the issue was the validity of a consent clause substantially the same as the one under consideration, the court said: "This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

The court in the Roberge Case does not purport to overrule this explicit and definite holding of the Cusack Case; it distinguishes the two by pointing out that billboards were likely to endanger the safety and decency of a district while a home for aged people would not be offensive, clearly showing that it considered there was ground for exercising the police power in one case while there was not in the other. In making the distinction in the Roberge Case, the court thus reveals that the basis of the decision was not "the attempted delegation of power," incidentally mentioned in the opinion, which would have been a reversal of the Cusack Case, but that the real ground for the decision was the arbitrary and unreasonable character of the ordinance in its application to the proposed home for aged people.

It is contended that the cases sustaining the consent clause, with few exceptions, are where a nuisance was involved. This contention is based on the statement of the court in the Roberge Case that the home would not be a nuisance. However, it should be observed that the court further said that it would not be an injury, inconvenience, or annoyance to the community. This language was used by the court in explaining why the ordinance was unreasonable in its application to the home. The decisive question was not whether the home would have been a nuisance. Zoning regulations are not limited in their scope to prohibiting nuisances; neither are consent clauses dependent for their validity on whether the restriction applies to a nuisance. It would seem useless to submit to property owners the question of whether they would consent to a nuisance. If zoning laws are to be effective, the governing authority should designate what shall and what shall not be located within the prescribed areas, with the limitations, of course, that the legislation shall be a lawful exercise of the police power and that the restrictions on private property shall not be arbitrary and unreasonable. The clause under consideration must stand or fall on the question of whether it contains an unauthorized delegation of legislative power and not on whether the proposed building would be a nuisance.

Attention has been directed to Eubank v. Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.(N.S.) 1123, Ann.Cas. 1914B, 192, where an ordinance, authorizing the committee on streets to establish a building line on request of the owners of two-thirds of the property abutting on the street, was held unconstitutional on the ground that it deprived complainants of property without due process of law. The distinction in that case and the one under consideration is clear. In the one, the building line was not established until the lot owners had acted and the committee on streets had performed the ministerial function of recording their action which had the effect of legislation; while in the other the law prohibits the construction of a building for commercial uses on plaintiff's lot and is not dependent for its existence or effectiveness on the action of property owners, and their consent to forego the safeguard provided by the restriction is not an exercise of legislative power. Furthermore, it is to be observed that the court in the Eubank Case held that the ordinance was not a valid exercise of police power and did not serve the public safety, convenience, or welfare.

■ From an analysis of the cases, it is clear that, where the law is complete in itself and its operation does not depend on an act of property owners, a consent provision is valid; but, where the law is not complete in itself, is not effective until the property owners act, and it is their action that imposes the restriction and that has the force and effect of law, it is invalid, because it then contains an unauthorized delegation of legislative power.

■ The point is made that the consent clause, being in the statute, deprives the city council of power to act except with the consent of the required number of property owners. The operation of the clause, so far as the plaintiff is concerned, would be the same whether in the statute or the ordinance. If the requisite number of owners consent, the city council can act; if they do not consent, the city council cannot act. The remedy then would be to resort to legislative action—by the Legislature if the clause were in the statute, or by the city council if the clause were in the ordinance. In other words, in the one case the appeal would be to the Legislature and in the other to the city council. The constitutionality of the clause undoubtedly does not depend on whether the clause is in the statute or the ordinance. The police power can be exercised by the state or by the city acting within the scope of the express or implied authority conferred by the state. Neither does the consent clause deprive the city council of discretion. The consent of property owners is a jurisdictional prerequisite to the consideration of an application for rezoning. If an application with proper consent is offered, the council determines whether the change is desirable, and the consent is not binding on the council.

■ The question of the propriety of the consent clause naturally arises. The Legislature could have enacted a law providing that a building for business purposes should not be constructed in a delimited zone, but obviously it preferred to modify the harshness of such a law by inserting a provision authorizing the city to do the zoning and the property owners to consent to rezoning. The consent clause is designed to enable owners in the position of the plaintiff more easily to secure a modification of the restrictions and to open the way for citizens in a community to meet the requirements of development and changing conditions.

There are cogent reasons why local owners are entitled to a voice in rezoning. They are the ones most vitally concerned; the usefulness and value of their property may be involved. When zones are established, citizens buy and improve property relying on the restrictions provided by law. They have a right to the permanency and security that the law should afford. They have a right to the assurance that their next-door neighbor at his pleasure will not convert his dwelling into a grocery or a shooting gallery. The owners in a block or on both sides of the street generally have a common interest in maintaining the residential or business character of the block or street, as the case may be, and their composite judgment ordinarily will result in action for the public welfare. Presumably the restrictions have added value to the property and have been beneficial to the district; otherwise the action imposing them would not have been a proper exercise of the police power. Hence the reason why the Legislature has vested in the owners the power contained in the consent clause. It is said that the owners within the designated area may refuse consent for selfish reasons or caprice. Similar arguments have been made to many courts, but they present a legislative question that should be addressed to the Legislature.

■ The defendant contends that the plaintiff cannot attack the constitutionality of the consent clause involved herein, and directs attention to the principle that a litigant can be heard to question the validity of a statute only when and so far as it is about to be applied to his disadvantage. Undoubtedly, the practical operation of the clause is to the disadvantage of the plaintiff in this particular instance; consequently the rule does not apply.

■ The provision of the statute in question does not permit the taking of property without due process of law and is not an unlawful delegation of legislative power and it therefore is not unconstitutional. Accordingly, the plaintiff's bill of complaint is dismissed.